UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael A. WILLIAMS, Defendant–
Appellant.

No. 92–3345.

United States Court of Appeals,
Tenth Circuit.

June 8, 1993.

Charles D. Anderson, Federal Public Defender, and Michael L. Harris, Asst. Federal Public Defender, Kansas City, KS, for defendant-appellant.

Lee Thompson, U.S. Atty., and Julie A. Robinson, Asst. U.S. Atty., D. Kan., Kansas City, KS, for plaintiff-appellee.

Before SEYMOUR, ANDERSON, and EBEL, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Michael A. Williams pled guilty to armed bank robbery and was sentenced to 240 months' imprisonment, 5 years' supervised release, and restitution of $13,000 to the victim of the robbery, Kansas City Fiberglass Credit Union. The sole question on appeal is whether the district court abused its discretion in ordering restitution when Williams had no money, no prospects, and faced 20

years in prison. We hold that it did not, and affirm.[1]

The following facts of record (the district court incorporated portions of the presentence report, by reference, in the sentencing proceeding. R.Supp. Vol. II at 14) are undisputed. At the time of sentencing Mr. Williams was 31 years of age, and in good mental and physical health. He had been in a common law relationship with Tracy Michelle Blackmon since 1984, and had two dependent minor children, ages 6 and 2. Mr. Williams completed the tenth grade before terminating high school, and received his GED in 1980.

The presentence report discloses that Mr. Williams has spent the majority of his adult life in jail. At age 19, while in the military, he was arrested and charged with robbery and kidnapping. Pursuant to conviction following a general court-martial, Mr. Williams served more than three years in the disciplinary barracks. Subsequently, he received a final discharge from the military on April 20, 1984. During December, 1986, Williams participated in a series of armed robberies for which, in 1987, he was sentenced to 10 year concurrent terms of imprisonment in the state of Missouri. He was released on parole on February 28, 1992, and committed the instant offense two months later, on April 30, 1992.

In the brief period between those two dates, Mr. Williams obtained employment with the Pioneer Container Company, Kansas City, Missouri, and was gainfully employed by them at the time of his arrest. He related to the probation officer that he was frustrated by not being able to provide an adequate standard of living for his family.

The district court found that Mr. Williams was indigent at the time of sentencing, R.Supp. Vol. II at 15, having no assets or liabilities. For that reason, and in view of the order of restitution, the district court did not impose a fine. *Id.* at 11.

The record does not disclose whether or not Mr. Williams has any employable skills.

The record does show that he is intelligent, articulate, and personable, having favorably impressed both the probation officer and the district court. Depending on the accrual of good time credits, Mr. Williams will be released from prison when he is approximately 50 years of age.

There is presently pending a parole violator's warrant and detainer issued by the Missouri Board of Probation and Parole with respect to the state convictions from which Mr. Williams was on parole at the time he committed the instant offense. The record does not disclose what the prospects are of his being required to serve out his state sentences upon the completion of his federal sentence. The district court found that the overall prognosis for Mr. Williams' rehabilitation "is extremely poor," and he poses a risk of recidivism. *Id.* at 10.

At sentencing, Mr. Williams' counsel objected to the $13,000 restitution order on the grounds that Mr. Williams was "[l]ooking at 20 years in prison" plus the revocation of his state parole, and "there is not any realistic ability my client would have to pay $13,000, even if it's spread over 20 years." *Id.* at 12–13. The district court responded by saying that a restitution obligation was appropriate in this case. *Id.* The court explained:

I believe, in fact, that the Defendant should be placed under that obligation. Whether he will be successful in accomplishing it or not is another matter. He will have earnings, although they'll be meager, in his prison environment, and I think that some portion of those should go towards paying this loss back. He may have other access or other means to accomplish that that we don't know of under these circumstances. As it stands at present between the innocent victim absorbing the loss or the Defendant having the obligation placed on him to absorb the loss, the Court feels that that burden should be imposed on this Defendant, so I will stay with the original recommended sentence.

*Id.* at 13–14.

"We review the district court's factual findings underlying [a] restitution order under a

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

clearly erroneous standard. *United States v. Teehee*, 893 F.2d 271, 273–74 (10th Cir.1990). We review the amount of the restitution order for an abuse of discretion. *United States v. Richard*, 738 F.2d 1120, 1122 (10th Cir. 1984)." *United States v. Rogat*, 924 F.2d 983, 984–85 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991).

Mr. Williams contends that the district court abused its discretion by ordering restitution. He argues that the district court violated 18 U.S.C. § 3664(a) by failing to consider "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents...." 18 U.S.C. § 3664(a). Amplifying that point, Mr. Williams states that the restitution order bears no relationship to his current financial status or future capability, since he has no assets, no real employment history, and is facing a 20 year sentence. Appellant's Brief at 5. In short, according to Mr. Williams, he has no ability to pay restitution now, and there is no realistic possibility of payment by him in the future, and the mere chance of future ability is not enough. *Id.* at 5–6.

Restitution orders are governed by 18 U.S.C. §§ 3663–3664 and U.S.S.G. § 5E1.1. Section 3664(a) provides that in determining whether to order restitution under § 3663, the court "shall consider the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." We are satisfied that the district court considered the required factors. The presentence report, which the court expressly adopted, detailed Mr. Williams' financial circumstances, employment history, and other facts permitting an evaluation of his earning ability. It described his dependents and disclosed that they were receiving government assistance in the form of Aid to Dependent Children, i.e., they were not self supporting and, of course, the two minor children are too young to generate earnings for a number of years.

 In determining whether a restitution order is an abuse of discretion, we consider whether the defendant actually had assets available to pay the restitution, or, even if no assets exist, whether there is sufficient "earning potential" or "earning ability" to create an objectively reasonable possibility that the restitution can be paid. *United States v. McIlvain*, 967 F.2d 1479, 1481 (10th Cir.1992); *United States v. Grimes*, 967 F.2d 1468, 1473 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992); *Rogat*, 924 F.2d at 985. To satisfy the objectively reasonable possibility standard, earning potential must consist of more than a "mere chance" that a defendant can earn the requisite amount. *McIlvain*, 967 F.2d at 1481. *Compare United States v. Mitchell*, 893 F.2d 935, 936 n. 1 (8th Cir.1990) (chance that defendant might win the lottery is insufficient justification for imposition of restitution order), *cited in Rogat*, 924 F.2d at 985, *with Rogat*, 924 F.2d at 985 (couple with no positive cash flow and negative net worth ordered to pay restitution of $2.5 million; couple was educated, talented, and skilled in business).

However, despite the principles set out in these and other cases in which we have discussed the subject,[2] restitution orders, being fact specific, must be evaluated on a case-by-case basis. The case before us presents a circumstance we have not previously considered—the possibility of restitution payments from earnings accumulated in prison during a long sentence, coupled with potential earn-

---

2. *United States v. Patty*, 992 F.2d 1045 (10th Cir.1993) ($7.6 million restitution order reversed in light of observation that it would take at least 100 years for defendant to pay restitution, based on her prior and potential earning ability); *United States v. Kelley*, 929 F.2d 582, 587 (10th Cir.) ($192,092 restitution order reversed; 60 year-old defendant with lower-income work experience could not pay restitution of such magnitude), *cert. denied*, —— U.S. ——, 112 S.Ct. 341, 116 L.Ed.2d 280 (1991); *United States v. Dunning*, 929 F.2d 579, 581 (10th Cir.) (in companion case to *Kelley*, coconspirator of defendant of similar age and experience found not to have potential to pay such a large amount), *cert. denied*, —— U.S. ——, 112 S.Ct. 224, 116 L.Ed.2d 182 (1991); *United States v. Clark*, 901 F.2d 855, 857 (10th Cir.1990) (nothing in record could support indigent defendant's ability to pay restitution of $153,762).

ings after release.[3]

In sentencing Mr. Williams, the district court, in the exercise of its authority to consider such factors as it deems appropriate, 18 U.S.C. § 3664(a), stated:

[A]fter consideration of the amount of loss sustained, the financial resources of the Defendant and the financial responsibility provisions of the Bureau of Prisons policies as well as the U.S. Probation Office that will encourage Mr. Williams to make ongoing payments for the duration of his confinement and term of supervised release[,] [h]e should be required to make restitution as hereinafter ordered.

R.Supp. Vol. II at 11–12. The program to which the district court referred in its findings is explained in the booklet issued by the Administrative Office of the United States Courts as follows:

Although statutes require that the court must consider several factors when ordering a fine or restitution, a judge may consider issuing an order requiring a reasonable financial penalty even when a defendant appears to have no apparent assets. Many inmates earn some money in prison and such funds can be accessed through the Inmate Financial Responsibility Program—up to 50% for payment of fines, special assessments, and other court-ordered financial obligations. Since 1987, the Federal Bureau of Prisons, through this voluntary program, has collected over $50 million from inmates. On average, Federal inmates that work can earn $1,000

a year; over the course of 10 years, this could represent the payment of a $5,000 fine or restitution order.

Administrative Office of the U.S. Courts, Bringing Criminal Debt into Balance: Improving Fine & Restitution Collection 17, (1992) (footnote omitted). This program, set forth in 28 C.F.R. § 545.10 (1992), provides for repayment of court-ordered restitution. *James v. Quinlan*, 866 F.2d 627, 628 n. 1 (3d Cir.1989). It has been implemented in other circuits, *see, e.g., United States v. Taylor*, 984 F.2d 618, 622 (4th Cir.1993) (defendant ordered to pay $2,000 fine through program during his 63 months of incarceration and 3 years of supervised release); *United States v. Turner*, 975 F.2d 490, 498 (8th Cir.1992) (defendant sentenced to concurrent sentences of life imprisonment and 40 years' imprisonment was required to pay $25,000 fine through the program), and has withstood constitutional challenge. *Dorman v. Thornburgh*, 955 F.2d 57, 58 (D.C.Cir.1992).

While it may seem unrealistic to expect an inmate to pay up to one-half of his meager earnings during a long term of imprisonment, the figures cited by the Administrative Office of the U.S. Courts show that the financial responsibility program works and is serving the salutary purpose for which it was intended. We support that purpose and the district court's reference to it as a source of some of the restitution ordered in this case. How much of the $13,000 taken from the victim of this robbery can be restored through such a program is problematical. Theoretically, Mr. Williams could pay up to

---

3. On one prior occasion we considered a restitution order requiring defendant to pay $22,000 imposed in conjunction with an imposed incarceration of 262 months. *See United States v. Novey*, 922 F.2d 624 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991). However, in *Novey* we remanded the restitution order to the district court on different grounds from those before us now, and the outcome of that proceeding is not apparent. On yet another occasion we upheld a sentence that included a restitution order of nearly $2,500 in conjunction with a 25-year term of incarceration, but in that case the terms of restitution were not disputed. *See United States v. McNeal*, 865 F.2d 1167 (10th Cir.), *cert. denied*, 490 U.S. 1094, 109 S.Ct. 2439, 104 L.Ed.2d 995 (1989).

At least one circuit has upheld a restitution order coupled with a lengthy incarceration. *See*

*United States v. Smith*, 944 F.2d 618 (9th Cir. 1991) (court upheld restitution order of $12.8 million (with possible reduction to $7.8 million depending on collateral disposition on remand) in conjunction with sentence of 10 years, to be paid within five years after release from prison; defendant had few assets and monthly income of $5,000), *cert. denied*, —— U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992). Also, fines, which require a similar financial commitment from the incarcerated defendant as does an order of restitution, have been upheld in conjunction with long prison terms. *See, e.g., United States v. Turner*, 975 F.2d 490 (8th Cir.1992) (fine of $25,-000 imposed on defendant in conjunction with concurrent terms of life imprisonment and 40 years' imprisonment).

$10,000 of that amount during his 20 years' incarceration; however, we doubt that payment of such an amount while in prison is a realistic possibility.

Of course, Mr. Williams can augment his income while in prison by participating in the prison industries program and selling products of his labor. Many do. Furthermore, a long period of incarceration can provide benefits which Mr. Williams might not otherwise receive on the outside, and which can increase his eventual employment potential and income. He can obtain a college degree or degrees while in prison, improve his communication skills, and acquire a multitude of other skills, both theoretical and practical. In short, incarceration might make it more, rather than less, likely that Mr. Williams will have the ability eventually to pay off the restitution amount.

On release from his federal confinement, Mr. Williams may be subject to further state confinement, but the record does not establish that that will be the case. If not, Mr. Williams will have a five year period of supervised release during which he will be required to pay the balance still owing on the $13,000 restitution order. With or without the benefits from prison described above, it is not beyond the realm of objectively reasonable possibility that Mr. Williams can make the required payments during that time, perhaps at the rate of approximately $100 per month, more or less, depending on how much restitution he paid during his long period of confinement. The paramount variables will be Mr. Williams' ability to obtain and keep gainful employment considering, among other things, his age, lack of prior history in the workplace, and skills at the time, the income such employment might command and his ability to sustain himself on that income, as well as make payments, and, of course, his health. No other variables seem to be paramount. His children will be in their twenties and no longer dependent upon him for support, and we cannot speculate on the status of Ms. Blackmon at that time. Given past history, inflation will likely have reduced the real dollar value of the restitution amount, making it easier for Mr. Williams to pay off. But that is also speculative.

In sum, we are satisfied that the district court considered the factors outlined in 18 U.S.C. § 3664(a) with respect to Mr. Williams' financial condition and that of his dependents, as well as other factors. *See United States v. Rogat,* 924 F.2d at 986. We are also satisfied that there is sufficient evidence to establish, from an objectively reasonable standpoint, that Mr. Williams has an "earning potential and thus possibly may be able to pay the amount ordered." *Id.* at 985, 986. *See United States v. Clark,* 901 F.2d at 855. The question here is not what amount we would order if we had been the district court. Sentencing occurs in the district court, not on appeal. Our standard of review is strict. We may not vacate the restitution order unless the district court abused its discretion. Given the facts of this case, we hold that the district court did not abuse its discretion in ordering restitution in the amount of $13,000 to be paid, essentially, over a period of 25 years.

Accordingly, for the reasons stated, we AFFIRM the district court's order of restitution and, consequently, the sentence imposed in this case.

SEYMOUR, dissenting.

While I do not disagree with much of what the majority says regarding restitution, I must respectfully dissent because I believe the needs of Mr. Williams' dependents were not adequately considered. Without the appropriate consideration given to this factor, the district court committed plain error in setting the amount of restitution.

We review the district court's factual findings underlying the restitution order under a clearly erroneous standard, and the amount of the restitution order for abuse of discretion. *United States v. Grimes,* 967 F.2d 1468, 1473 (10th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992). However, we review legal issues relating to restitution errors for plain error, *United States v. Herndon,* 982 F.2d 1411, 1420 (10th Cir.1992); *United States v. Patty,* 992 F.2d 1045, 1048–49 (10th Cir.1993). We have explicitly held that restitution ordered under an inappropriate legal standard constitutes an

illegal sentence and amounts to plain error. *United States v. Levy,* 992 F.2d 1081, 1085 n. 5 (10th Cir,1993); *Patty,* 992 F.2d at 1048; *United States v. Wainwright,* 938 F.2d 1096, 1098 (10th Cir.1991); *see also United States v. Gomer,* 764 F.2d 1221, 1222 (7th Cir.1985) (holding failure to consider the needs of dependents to be plain error).

Congress has mandated that in setting restitution, "[t]he court ... *shall* consider ... *the financial needs* and earning ability *of* the defendant and *the defendant's dependents.*" 18 U.S.C. § 3664(a) (emphasis added). "The [statute] requires some principled balancing between the needs of the victims and the needs of the dependents." *Gomer,* 764 F.2d at 1224 (construing 18 U.S.C. § 3580, renumbered § 3664 effective Nov. 1, 1986). "[T]he needs of the defendant's dependents may require a reversal of an order of full restitution." *United States v. Arvanitis,* 902 F.2d 489, 497 (7th Cir.1990); *see also United States v. Mahoney,* 859 F.2d 47 (7th Cir. 1988) (restitution award reversed because, inter alia, the court failed to consider needs of dependent wife with paranoid schizophrenia). In *United States v. Grimes,* 967 F.2d at 1473–74, we considered the needs of the defendant's dependents and reversed a restitution order of $128,279.05 because "[g]iven [the defendant's] financial status, and *six dependent children,* the likelihood of her earning sufficient income *to meet* her *financial responsibilities* and pay the amount of the restitution order is unrealistic." (Emphasis added).

The presentence report here reflects that Mr. Williams has two children and a common law relationship with Ms. Blackmon, and that Mr. Williams' pre-arrest income was sufficient to support the two children, Ms. Blackmon, and himself. However, Ms. Blackmon is now receiving public assistance in order to support herself and the two children. The

district court ordered full restitution of $13,-000. Rec., supp. vol. II, at 9. In doing so, the court balanced the needs of "the innocent victim" and defendant, *id.,* without reference to the needs of Mr. Williams' dependents.

The issue of Mr. Williams' dependents was not raised below. Nothing in the objections to the presentence report or in the sentencing hearing acted to specifically. focus the district court on the needs of Mr. Williams' dependents. Despite this absence, the majority here holds that the court adequately considered this factor. This holding is premised on the fact that the district court adopted the findings of the presentence report and that the report mentioned the existence of the dependents and their present financial status in a section entitled "Personal and Family Data".

We have clearly stated that district courts must create a record of the factual findings underlying a restitution order. *United States v. Hill,* 798 F.2d 402, 406–07 (10th Cir.1986). In *Hill,* the district court ordered the defendant to pay $148,330 in restitution. Under our obligation to "examine the method or process by which a sentence is imposed," *id.* at 407, we reversed the restitution order and stated: "The record in this case is void of any factual determinations by the district court except the finding that the [victim's] loss ... was ... $148,330.00," *id.* We noted that " 'Congress has placed a duty on the trial courts to make several factual determinations under the Act,' " *id.* at 406 (quoting *United States v. Watchman,* 749 F.2d 616, 618 (10th Cir.1984)), and we remanded for the required determinations.

More recently, we held that the district court need not make explicit factual findings where the record is clear that the court considered the relevant factors. *See United States v. Rogat,* 924 F.2d 983, 986 (10th Cir.1991);[1] *see also United States v. Savoie,*

---

1. *Rogat* was followed in *United States v. Wise,* 990 F.2d 1545 (10th Cir.1992), where we upheld the district court's award of restitution. The defendant argued that the court did not adequately consider his ability to pay. We rejected this argument, noting the district court's express findings that the defendant "has been quite successful in his professional endeavors and it is quite likely he will experience an ability to earn substantial sums in the future." *Id.* 990 F.2d at

1548. Similarly, in *United States v. Morrison,* 938 F.2d 168 (10th Cir.1991), we held the district court adequately considered the defendant's ability to comply with a restitution order. This consideration was evident in "several parts of the transcript in which defendant's financial situation and employment prospects were discussed." *Id.* at 171.

985 F.2d 612, 618 n. 7 (1st Cir.1993) (stating that the "Tenth Circuit has sent mixed signals" on the necessity of explicit findings concerning restitution orders). In *Rogat*, we found clear indication of the required consideration where the district court stated it was aware of representations as to the defendants' financial status, had "everything in mind, if it's in the Probation Department reports," 924 F.2d at 985, conferred with the probation officer at the sentencing hearing, and acknowledged that the defendants would be unlikely to repay the restitution order very soon.

We recognized in *Rogat* that "[w]hen there is substantial ambiguity as to whether the judge considered the statutory factors, specific factual findings in the record may be required for effective appellate review." *Id.* at 986 (citing *Hill*, 798 F.2d at 406–07). In *United States v. Diamond*, 969 F.2d 961 (10th Cir.1992), for example, we remanded for further findings and specifically instructed the district court that "the findings must be sufficiently detailed to allow this court to review the 'method or process' by which the district court calculated any ordered restitution." *Id.* at 970; *see also United States v. McIlvain*, 967 F.2d 1479, 1481–82 (10th Cir. 1992) (concluding that the district court failed to consider defendant's financial condition when ordering $160,248 in restitution from a defendant with no assets, no steady employment, no source of income, a high school education, and debt of $700).

The impact of restitution orders on minor children is too important to be left to an assumption that because their existence is mentioned in the presentence report, the district court performed its statutorily mandated duty to weigh defendant's obligation to them in assessing his obligation to the victim. On this record, there is absolutely no indication that the district court considered the needs of Mr. Williams' dependents. A failure to weigh this factor constitutes plain error. I would reverse the district court's order of full restitution and remand for a new hearing with instructions to explicitly consider the needs of the dependents.

---

Neither of these cases are representative of the case before us. The transcript reflects that the district court made no express findings, nor ever discussed, the needs of Mr. Williams' dependents.