**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jerry Craig COLEMAN, Defendant–
Appellant.**

**No. 92–5146.**

United States Court of Appeals,
Tenth Circuit.

Nov. 22, 1993.

Thomas Scott Woodward, Asst. U.S. Atty.
(Tony M. Graham, U.S. Atty., Tulsa, OK,

with him on the briefs), Tulsa, OK, for plaintiff-appellee.

William E. Hughes, Tulsa, OK, for defendant-appellant.

Before ANDERSON, KELLY and ENGEL,* Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Jerry Craig Coleman appeals his conviction and sentence on charges of armed robbery of a bank, in violation of 18 U.S.C. § 2113(d), and use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1). He contends that: (1) there was insufficient evidence of his participation in the bank robbery; (2) he did not "use" a gun, as "use" is construed under §§ 2113(d) and 924(c)(1), when he attempted to grab a bank security guard's gun, struggled for its possession with the guard, but never wrestled the gun away; (3) he should not have been sentenced as a career offender under United States Sentencing Guideline (U.S.S.G.) 4B1.1; (4) his criminal history calculation should not have included three points for a 1971 conviction; (5) the district court abused its discretion in ordering him to pay restitution; and (6) he argues *pro se* that he was denied effective assistance of counsel. We affirm.

## BACKGROUND

Coleman and a friend, Brian Edmond Turner, were indicted on charges of armed bank robbery and use of a firearm in a crime of violence. R. Vol. I, at 15. Turner pled guilty. Coleman went to trial and a jury convicted him on both counts. *Id.* at 43. The district court sentenced Coleman under the Sentencing Guidelines to consecutive prison terms of 262 months and 60 months for the § 2113(d) and § 924(c)(1) violations, respectively. *Id.* at 58. The court also ordered him to pay restitution to the Stillwater National Bank (in Tulsa, Oklahoma) in the amount of $5,528, jointly and severally with Turner. *Id.* Coleman was not fined because of his inability to pay. He now appeals.

---

* Honorable Albert J. Engel, United States Circuit Judge, Sixth Circuit Court of Appeals, sitting by

## DISCUSSION

### I.

Coleman first contends that there was insufficient evidence to support his conviction for armed bank robbery. We review the record *de novo* for sufficiency of the evidence. *United States v. Grimes,* 967 F.2d 1468, 1472 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992). Viewing the evidence and reasonable inferences that can be drawn from it in the light most favorable to the government, *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979), we summarize the facts.

On the morning of December 5, 1991, a security guard sitting behind a desk inside the federally insured Stillwater National Bank observed two persons, Coleman and Turner, approaching the entrance of the bank "faster than a walk but slower than a trot." R. Vol. III, at 85. The security guard, Harry W. Hunt, said "[i]t struck me as suspicious to see them moving that fast." *Id.* Hunt unholstered his service revolver, a .357 magnum, placed it on the credenza behind his desk, and kept one hand on it. *Id.* at 86.

Coleman and Turner entered the bank, stopped together momentarily, then proceeded in different directions. *Id.* Turner went directly to a teller's window, where he told the teller he had a gun (though he did not) and threatened to kill her. When she backed away, he reached across the counter, removed money from the cash drawer (including "bait" money triggering a camera that recorded Turner's exit and Coleman's scuffle), and fled the bank. *Id.* at 39–40, 62, 80.

Meanwhile, as Turner confronted the teller, Coleman walked directly to the civilian-clothed security guard, Hunt. He walked around to the side of Hunt's desk, which Hunt said was unusual. *Id.* at 87–88. Coleman mentioned something about the cleaning or maintenance service, and then requested a

designation.

loan. *Id.* at 87. Hunt testified, "I had just finished saying he would have to see someone else at the bank [for a loan], [when] I saw him look across the desk and see my gun, and ... he did a double-take and then another one, just like that, and immediately on doing that, he dove across me and got his hand on my hand which was on the gun." *Id.* at 88–89.

Hunt testified that he and Coleman wrestled for control of the gun behind his desk, "and [Coleman] said, 'let go of the gun, let go of the gun, or when I get it I'm going to kill. I'm going to kill you with your own [ ] gun.'" *Id.* at 89–90. Another bank employee who witnessed the struggle testified that she heard someone other than Hunt say "kill" during the struggle and that she was frightened. *Id.* at 65, 70. The two men continued to grapple around the desk, across the bank lobby, and out the front doors, where Hunt apprehended Coleman. *Id.* at 93.

Detective Charlie Folks, who interviewed Coleman after he had been arrested, testified that Coleman said, "I lost my job today and I went out and done something crazy." *Id.* at 115. Two days before the robbery, Coleman had been dismissed from his job as a maintenance mechanic for a Tulsa hospital. *Id.* at 9.

■ Evidence, including reasonable inferences to be drawn therefrom, is sufficient to sustain a conviction if, viewed in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Grimes,* 967 F.2d at 1472. Coleman contends that the government failed to prove that he knew of Turner's plan to rob the bank, and that his "scuffle with the security guard ... interrupted the possibility there would ever develop sufficient circumstantial evidence of [his]

culpable participation." Appellant's Brief, at 15. To the contrary, we find Coleman's struggle for the security guard's gun precisely the circumstantial evidence from which a reasonable jury could infer Coleman's culpable intent beyond a reasonable doubt. We find the evidence, viewed favorably to the verdict, sufficient and reject this contention.

## II.

Coleman next contends that he did not, as a matter of law, "use" a weapon, as must be proven under both 18 U.S.C. §§ 2113(d) and 924(c)(1).[1] There was no evidence that Turner had a weapon. Thus, the government prevailed at trial on the theory that Coleman "used" the security guard's gun by lunging for it and struggling to control it. Coleman argues that he never had enough control or possession of the weapon to "use" it.

■ The determination that someone has "used" a weapon in violation of § 2113(d) and § 924(c)(1) is a legal conclusion that we review *de novo. United States v. Young,* 952 F.2d 1252, 1255 (10th Cir.1991). The evidence presented to the jury was that Coleman tried to get Hunt's weapon from him but did not fully succeed. Hunt testified that "[t]here was no doubt in my mind had I lost the gun he would have killed me with my own gun.... I wasn't in control of it. We were jointly in control of it. I was trying to get control of it, but I could not. I could not get my hand around him to pull his hand away enough to get the gun." R. Vol. III, at 93. Coleman would have us infer from Hunt's testimony and the photographs of their struggle that not only did he fall short of disarming Hunt, he also failed to acquire any more dominion and control over the gun than Hunt (*i.e.*, control was, at most, in equipoise). Appellant's Reply Brief at 7. Even

---

1. Section 2113(d) enhances the punishment for bank robbery under § 2113(a). It provides:
 "Whoever, in committing ... or attempting ... [a bank robbery] ..., puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than 25 years, or both."
Section 924(c)(1), meanwhile, further enhances certain sentences by five years. It states:

Whoever, during and in relation to any [federal] crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime ... be sentenced to imprisonment for five years. It is not a violation of Double Jeopardy, and Coleman does not contend that it is, to punish a defendant consecutively under both § 2113(d) and § 924(c)(1). *United States v. Lanzi,* 933 F.2d 824, 826 (10th Cir.1991).

viewing the facts as Coleman suggests, his argument has no merit.

■ The "use of a dangerous weapon or device" necessary to commit an "armed" robbery under § 2113(d) requires that the defendant,

> created an apparently dangerous situation, (b) intended to intimidate his victim to a degree greater than mere use of language, (c) which does, in fact, place his victim in reasonable expectation of death or serious bodily injury.

*United States v. Spedalieri*, 910 F.2d 707, 710 (10th Cir.1990); *United States v. Crouthers*, 669 F.2d 635, 639 (10th Cir.1982). Under this test, for example, an "armed" bank robbery can be committed with a fake or unloaded gun. This is because the presence of even an unloaded gun increases the danger of an immediate violent response, *McLaughlin v. United States*, 476 U.S. 16, 17–18, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986), and because it is unreasonable to expect the robbery victim to risk life to positively ensure that the assailant has a gun that is loaded. *Crouthers*, 669 F.2d at 639. For identical reasons, "armed" robbery of a bank does not require that the assailant have a precise, measurable amount of physical dominion or control over a weapon. The distinction between "use" of a weapon under § 2113(d) and something less than "use" turns on whether the victims *reasonably* expected that the assailant could use the weapon to inflict upon them death or serious bodily injury, not on the assailant's degree of control of the weapon. These are not unrelated, of course. However, just as we do not expect victims to predict whether a gun is loaded, we do not expect them to predict who might win a struggle for a weapon. Thus, we hold without difficulty that Coleman's struggle for the security guard's gun and his contemporaneous threats that he would kill the guard if he was not given the gun were sufficient to support the conviction for "armed" robbery under § 2113(d).

■ Likewise, Coleman's control of the gun, even though it fell short of enabling him to point and fire, was sufficient for purposes of § 924(c)(1). We have noted that "'the evident purpose of [§ 924(c)] was to impose more severe sanctions where firearms facilitated, or had the potential of facilitating, the commission of a felony.'" *United States v. Sullivan*, 919 F.2d 1403, 1432 (10th Cir.1990) (quoting *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985) (opinion of Kennedy, J.)). Thus,

> [i]f the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred, then there is a violation of the statute.

*Stewart*, 779 F.2d at 540; *see also Sullivan*, 919 F.2d at 1431 ("uses" element of § 924(c)(1) satisfied where defendant has "ready access" to a firearm, which is an "integral part" of the criminal undertaking, and its "availability" increases the likelihood that the criminal undertaking will succeed). For purposes of § 924(c)(1), one clearly has sufficient access to, or possession and control of a firearm when they are touching it, struggling for it, and trying to control it. *Cf. United States v. Long*, 905 F.2d 1572, 1576–78 (D.C.Cir.) (court overturns 924(c)(1) conviction where defendant was arrested in another person's apartment and at the time of arrest a gun was found beneath the seat cushions of a sofa in a different room, but there was no evidence the defendant knew of the gun, was headed for it, or had "any indicia of possession") (opinion of Thomas, J.), *cert. denied*, 498 U.S. 948, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990). Thus, we hold that a jury could reasonably infer from Coleman's struggle for the bank security guard's gun that he "used" a firearm in relation to a bank robbery for purposes of § 924(c)(1).

### III.

■ Coleman alleges two errors in the calculation of his 262–month sentence under the United States Sentencing Guidelines. First, he challenges his classification as a

"career offender" under U.S.S.G. § 4B1.1.[2] He contends that his 1977 conviction for robbery should not have counted as one of the "two prior felony convictions" required by section 4B1.1 because it falls outside the time period of section 4A1.2(e)(2). This contention misconstrues the guidelines and we reject it.

Section 4A1.2(e) establishes time periods beyond which a defendant's prior conviction will not factor into his criminal history at sentencing. Subparagraph (1) requires the sentencing judge to count:

> [a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the ... commencement of the instant offense. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

Subparagraph (2), meanwhile, instructs the sentencing judge to count "any other prior sentence" (i.e., a sentence of less than one year and one month imprisonment) only if it was imposed within ten years of the instant offense.

On January 27, 1977, Coleman was convicted of robbery in California and sentenced to a one-year term of imprisonment plus a five-year probationary term.[3] R. Vol. II, at 10. On March 1, 1978, his probationary sentence was revoked because he violated the law, and he was returned to confinement under this conviction for two more years until February 29, 1980, when he was paroled to federal custody. Id. at 11. The instant offense was commenced in December of 1991.

Coleman contends that section 4A1.2(e)(2) precludes counting his 1977 conviction because the sentence *imposed* was for less than

one year and one month, and it was not imposed within ten years of the instant offense. He argues that the fifteen-year period of subparagraph (1) is inapplicable because it applies only to sentences of imprisonment "exceeding one year and one month."

Section 4A1.2(k), however, addresses the effect of revocations of probation. Section 4A1.2(k)(1) says to "add the original term of imprisonment to any term of imprisonment imposed upon revocation," and subsection (k)(2)(B) says that this "may affect the time period under which certain sentences are counted as provided in ... § 4A1.2(e)." Subsection (k)(2)(B) then proceeds to explain:

> "For purposes of determining the applicable time period, use the following: (i) in the case of an adult *term of imprisonment totaling* more than one year and one month, the date of last release from incarceration on such sentence (*see* § 4A1.2(e)(1))."

U.S.S.G. § 4A1.2(k)(2)(B) (emphasis added).

These guidelines clearly direct the sentencing judge to add the time of imprisonment served on a revocation of probation to the original sentence imposed. If, having added these terms, the total term of imprisonment exceeds one year and one month, *and* the defendant's date of last release from incarceration on this sentence is within the fifteen-year time period of section 4A1.2(e)(1), then the conviction is counted as a predicate offense under section 4B1.1 for "career offender" purposes. *See United States v. Salmon*, 944 F.2d 1106, 1128 (3d Cir.1991), *cert. denied sub nom.*, —— U.S. ——, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992). Coleman's term of imprisonment for his 1977 conviction, including the time served upon revocation of his probation, totaled three years. His date of last release from this sentence was in 1980, which is within fifteen

---

**2.** A defendant over 18 years of age who is convicted for a crime of violence is sentenced as a "career offender" if the defendant "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. The provisions of section 4A1.2 apply to the counting of convictions for "career offender" purposes. *Id.* § 4B1.2, comment. (n. 4).

**3.** We acknowledge that the government supplemented the record to show that what Coleman actually received was a five-year probated sentence with credit given for one year of jail time served. We elect to address the argument as Coleman makes it, because the factual discrepancy makes no difference in the analysis or outcome. Coleman's argument turns exclusively on the fact that his sentence as originally imposed did not exceed one year and one month, which is true either way.

years of the instant offense. Therefore, the sentencing judge did not err in classifying Coleman as a career offender.

■ Coleman next contends that the district court erred in attributing three criminal history points under U.S.S.G. § 4A.1.1(a) to his 1971 conviction for grand theft auto. For this conviction he received probation, which was revoked and replaced with a seven-year sentence at his sentencing hearing for a separate 1973 conviction. R. Vol. II, at 8–9. He argues that because the revocation of probation on his 1971 conviction was "consolidated" with—or, was ordered during—his sentencing for the 1973 conviction, the two convictions are "related cases" under U.S.S.G. § 4A1.2(a)(2) and should not both be counted for criminal history purposes. This argument has no merit, as the guidelines and their commentary make clear. See U.S.S.G. § 4A1.2 comment. (n. 3) ("Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest.") & comment. (n. 11) ("If ... at the time of revocation another sentence was imposed for a new criminal conviction, that conviction would be computed separately from the sentence imposed for the revocation."); see also United States v. Jones, 898 F.2d 1461, 1464 (10th Cir.1990) (Held: separate proceedings to revoke probation and resentence defendant for each offense are not necessary to preserve the status of prior convictions as "unrelated cases."), cert. denied, 498 U.S. 838, 111 S.Ct. 111, 112 L.Ed.2d 81 (1990).

## IV.

■ Coleman further contends that the district court abused its discretion by ordering restitution.[4] The district court ordered him to pay $5,528 to the Stillwater National Bank, jointly and severally with co-defendant Turner. R. Vol. IV, at 193. He

argues that the district court failed to consider his financial condition before ordering restitution, and that the facts in the record show he is unable to pay. We disagree.

Restitution orders are governed by 18 U.S.C. § 3663–3664 and U.S.S.G. § 5E1.1. "In determining whether to impose an order of restitution, and the amount of restitution, the court shall consider the amount of loss the victim suffered ..., the financial resources of the defendant, the financial needs of the defendant and his dependents, and other factors the court deems appropriate." 18 U.S.C. § 3664(a); U.S.S.G. § 5E1.1 comment. (backg'd).

■ Coleman argues that the district court did not adequately consider his ability to pay because it "made no oral or written findings" specific to the restitution order. Appellant's Brief, at 33. We have held that "the judge need not specifically recite his findings" regarding the defendant's financial condition when ordering restitution. United States v. Rogat, 924 F.2d 983, 986 (10th Cir.), cert. denied, 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991). We are satisfied that the appropriate factors have been considered when such factors are detailed in the presentence report that the district court has adopted, or such consideration is otherwise implicit in the record. United States v. Williams, 996 F.2d 231, 233 (10th Cir.1993); United States v. Savoie, 985 F.2d 612, 618 (1st Cir.1993) (open court findings unnecessary).

The presentence report in this case reports that Coleman has no financial assets or liabilities, a "poor" employment background, the probability of long-term incarceration, and that he is in "no position to pay a fine," particularly "with the likely imposition of a Restitution Order." R. Vol. II, at 17–18. It also reports that Mr. Coleman has no children, and that his most recent marriage end-

---

4. We note first that, contrary to the government's contention, Coleman's failure to object to the restitution order at sentencing does not preclude our review of this issue. Improperly ordered restitution constitutes an illegal sentence and amounts to plain error, which we may notice on appeal despite the failure of the defendant to object at sentencing. United States v. Herndon, 982 F.2d 1411, 1420 (10th Cir.1992); United

States v. Wainright, 938 F.2d 1096, 1098 (10th Cir.1991). We review the district court's factual findings underlying the restitution order for clear error, and the amount of the restitution order for abuse of discretion. United States v. Rogat, 924 F.2d 983, 984–85 (10th Cir.), cert. denied, 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991).

ed in separation. *Id.* at 16–17. At the sentencing hearing, the district court told Coleman, "you certainly are not in any financial condition to pay a fine," and subsequently ordered restitution, but waived the statutory fine. R. Vol. IV, at 192. We are satisfied that the district court adequately considered Coleman's financial condition.

 We also are satisfied that the district court did not abuse its discretion in ordering restitution. "In determining whether a restitution order is an abuse of discretion, we consider whether the defendant actually had assets available to pay restitution, or, even if no assets exist, whether there is sufficient 'earning potential' or 'earning ability' to create an objectively-reasonable possibility that the restitution can be paid." *Williams,* 996 F.2d at 233. In *Williams* we held that an indigent defendant, who faced a 20–year term of imprisonment and a $13,000 restitution order, had an "objectively reasonable" possibility of being able to pay the restitution, in large part because of the Inmate Financial Responsibility Program in the federal prisons, through which money that inmates earn while working in prison can be applied to fines and restitution. *Id.* at 234–35. The district court did not order Coleman to pay his share of the $5,528 in restitution immediately, but said that "[a]ny amounts not paid immediately shall be payable during any period of incarceration or supervised release." R. Vol. IV, at 193. Coleman has potentially up to 32 years to pay his restitution. We find no abuse of discretion in the district court's order.

### V.

 Coleman has filed a *pro se* supplemental brief raising several claims of ineffective assistance of counsel.[5] It is our policy on direct appeals such as this only to address issues raised by counsel, who have been trained and in many cases appointed for that very purpose, and we invoke that policy here. Furthermore, the preferred avenue for bringing claims of ineffective counsel is by

---

5. He alleges ineffectiveness in his counsel's failure to investigate whether co-defendant Turner had made or would make any statements that would exculpate Coleman. He also charges his

collateral attack under 28 U.S.C. § 2255. *Beaulieu v. United States,* 930 F.2d 805, 806 (10th Cir.1991). We therefore decline to address these claims.

Coleman's conviction and sentence are AFFIRMED.

counsel with failing to object to several jury instructions, and failing to obtain a complete trial transcript in preparing for this appeal.