**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 8 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KELLY ROYJA ANKERPONT,

Defendant-Appellant.

No. 97-4033
(D.C. No. 95-CR-249)
(D. Utah)

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHARLES KENNETH HEADDRESS,

Defendant-Appellant.

No. 97-4035

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **BARRETT**, and **HENRY**, Circuit Judges.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. These cases are therefore ordered submitted without oral argument.

Defendants-appellants Kelly Royka Ankerpont and Charles Kenneth Headdress pled guilty to second-degree murder in Indian Country, in violation of 18 U.S.C. §§ 1111, 1153(a), and aiding and abetting the murder, in violation of 18 U.S.C. § 2. They appeal the district court's determination to make a six-level upward adjustment of their sentences, based on U.S.S.G. § 5K2.8, which permits upward departure in offense level for extreme conduct. Ankerpont also appeals the imposition of an $8,000 fine. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and affirm.

## BACKGROUND

On the night of the murder, Ankerpont, Headdress, Thomas James Sowsonicut (a juvenile), and the victim were drinking beer and driving around in a car owned by Ankerpont's mother. After 3:30 a.m., a disagreement arose between Sowsonicut and the victim. Sowsonicut attempted to strangle the victim while both were seated in the car. Ankerpont then stopped the car on a dirt road. The victim was dragged out of the car and knocked to the ground, where he was kicked, beaten, stabbed with a screwdriver, and choked with jumper cables.

Ankerpont then used the cables to drag the victim behind the moving car for approximately 744 yards.  When these actions did not result in the death of the victim, he was placed in the trunk of the car and driven to another location.  Throughout these events, the victim was screaming, moaning, and asking for help.  Ankerpont, Headdress, and Sowsonicut took the victim out of the trunk, pushed or kicked him into a creek bed, and then threw rocks at him until he died.  They moved the body into a culvert and left it lying face down in the water.

The next day, Ankerpont led authorities to the body.  An autopsy showed that the immediate cause of the victim's death was blunt-force injury to the head and that strangulation was a significant factor in the death.  The victim, who was intoxicated when he died, also had multiple abrasions, lacerations, and puncture wounds.

Ankerpont, Headdress, and Sowsonicut were arrested and questioned.  All made statements giving the same general account of the murder, but furnishing different versions of their own participation in it.  Ankerpont and Headdress entered guilty pleas to second-degree murder.  Prior to sentencing, the district court held an evidentiary hearing, at which Headdress, Sowsonicut, law enforcement officials, and the deputy medical examiner testified about the crime, and autopsy photographs were entered into evidence.

The calculation under the United States Sentencing Guidelines was the same for both defendants. The base offense level was 33, see U.S.S.G. § 2Al.2, with a three-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, and a two-level upward adjustment for restraint of the victim, pursuant to U.S.S.G. § 3A1.3. The result was an offense level of 32 and, for their criminal history category, a sentencing range of 121 to 151 months.

Based on the nature of the offense, however, the court determined that an upward departure for extreme conduct, under U.S.S.G. § 5K2.8, was warranted.[1] It made express findings that the conduct of both Ankerpont and Headdress "was unusually heinous, cruel, brutal and degrading," in that they each engaged in torturing the victim and prolonging his pain. Ankerpont R., Vol. IV. at 23-24; Headdress R., Vol. V. at 49. In deciding the extent of the departure, the court used by analogy the guideline for aggravated assault, U.S.S.G. § 2A2.2, which provides for a six-level increase in cases of permanent or life-threatening bodily injury. With the upward departure, the total offense level was 38, with a

---

[1]    U.S.S.G. § 5K2.8 provides:

If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation.

sentencing range of 235 to 293 months. The district court sentenced Ankerpont and Headdress to 240 months' imprisonment.

## DISCUSSION

### United States v. Ankerpont, No. 97-4033

On appeal, Ankerpont argues that his crime was within the guideline heartland for second-degree murder and that the departure was unreasonable in degree. He also appeals the imposition of the fine.

A district court's decision to depart from the sentencing guidelines is reviewed for abuse of discretion. See Koon v. United States, 518 U.S. 81, 116 S. Ct. 2035, 2043 (1996). On appeal, we consider the following issues:

> (1) whether the factual circumstances supporting a departure are permissible departure factors[,] (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure, (3) whether the record sufficiently supports the factual basis underlying the departure, and (4) whether the degree of departure is reasonable.

United States v. Collins, 122 F.3d 1297, 1303 (10th Cir. 1997). Departure under U.S.S.G. § 5K2.8 is appropriate "when the defendant's actions are heinous, cruel, or brutal beyond the characteristics inherently associated with the crime being sentenced." United States v. Kelly, 1 F.3d 1137, 1143 (10th Cir. 1993).

We have reviewed the entire record and agree with the district court that Ankerpont's crime was unusually brutal within the universe of second degree

murders. The district court did not abuse its discretion in determining that an upward departure was warranted.

Next we evaluate the reasonableness of the court's departure. "When departing from the Guidelines, the court should look to the Guidelines for guidance in characterizing the seriousness of the aggravating circumstances to determine the proper degree of departure." United States v. Jackson, 921 F.2d 985, 990 (10th Cir. 1990). The court may use "an analogy to other closely related conduct or circumstances that are addressed by the guidelines." Id. at 990-91 (quotation omitted). That is precisely what the district court did in this case. It was entirely reasonable to determine the proper degree of departure by analogizing the conduct at issue to aggravated assault.

The last issue we must address concerns the court's imposition of an $8,000 fine, based on the determination that Ankerpont could pay a fine through the Bureau of Prison's Inmate Financial Responsibility Program, during his lengthy term in custody. See Ankerpont R., Vol. IV at 26. We review this decision for plain error because Ankerpont failed to object to the fine during the district court proceedings. See United States v. Ballard, 16 F.3d 1110, 1114 (10th Cir.1994).

Under the sentencing guidelines, a fine is to be imposed in all cases unless the defendant establishes that he is unable to pay or is not likely to ever become able to pay a fine. See U.S.S.G. § 5E1.2(a). In United States v. Williams, 996

F.2d 231, 231-32 (10th Cir. 1993), we upheld a $13,000 restitution order where the defendant had no current financial resources, but had been sentenced to twenty years in prison. The district court reasoned that the defendant would be able to use money earned in prison to pay the restitution. Id. at 232. We held that the district court did not abuse its discretion. Id. at 235. The facts of this case fall within the Williams holding. Therefore, we cannot say the district court committed plain error in assessing the $8,000 fine.[2]

### United States v. Headdress, No. 97-4035

Headdress appeals his sentence, asserting that the district court abused its discretion in applying the six-level upward adjustment for extreme conduct. He claims that (1) the crime was not unusually heinous; (2) he was too intoxicated to intend the crime to be unusually heinous; (3) he cannot be held responsible for acts of codefendants; and (4) the upward departure, coupled with the enhancement for restraint of the victim, constituted impermissible double counting. None of these contentions has merit.

As we have stated above, the facts of this case warrant upward departure, in that the treatment of the victim was "unusually heinous, cruel, [and] brutal," U.S.S.G. § 5K2.8, even when compared with other second-degree murders. There

---

[2]    The normal range for a fine under offense level 38 is $25,000 to $250,000. See U.S.S.G. § 5E1.2(c)(3).

is no requirement of specific intent in the plain language of section 5K2.8 and Headdress provides us with no reason to superimpose one.  In any event, we note the district court's finding that, although Headdress was intoxicated, he "certainly knew what he was doing."  Headdress R., Vol. V. at 48.

Similarly, there is no support in the record for the contention that the district court based the upward departure on the conduct of codefendants, rather than Headdress himself.  At the sentencing hearing, the district court made it clear that it was considering Headdress's own conduct.  The court found that Headdress was involved in the attempted strangling, id. at 47; the kicking of the victim while he was lying down, id. at 48; "the prolonging of the pain and humiliation that was suffered" by the victim, id. at 49, and the final events at the creek bed, id. at 47.

Finally, Headdress argues that since he received a two-level enhancement for restraint of the victim under U.S.S.G. § 3A1.3, he may not receive a six-level upward departure for extreme conduct under U.S.S.G. § 5K2.8.  This argument is misplaced.  "Impermissible double counting or cumulative sentencing 'occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes.'"  United States v. Fisher, 132 F.3d 1327, 1329 (10th Cir. 1997) (quoting United States v. Blake, 59 F.3d 138, 140 (10th Cir. 1995)).

Here, the sentence was increased under U.S.S.G. § 3A1.3 because the victim was physically restrained in the trunk of a car while being taken from the roadside, where he was kicked and tortured, to the creek bed, where he was stoned.  See Headdress R., Vol. V at 48.  The events at the two separate crime scenes are more than sufficient to justify the upward departure for extreme conduct, without consideration of restraint during transportation.  The district court properly applied both increases.

## CONCLUSION

The judgments of the United States District Court for the District of Utah are AFFIRMED.

Entered for the Court


James E. Barrett
Senior Circuit Judge