**Darrell PROWS, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, et al., Defendants.**

**Civ. A. No. 87–1926–LFO.**

United States District Court, District of Columbia.

Dec. 21, 1988.

---

Michael T. Janik, Michael J. Anderson, McKenna, Connor & Cuneo, Washington, D.C., for plaintiff.

Jay B. Stephens, U.S. Atty., John D. Bates, Mark E. Nagle, Asst. U.S. Attys., Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff, a prisoner in the La Tuna Federal Correctional Institution in Anthony, New Mexico, challenges the constitutional and statutory validity of the Federal Bureau of Prisons' Inmate Financial Responsibility Program ("IFRP"), 28 C.F.R. § 545.10 *et seq.* Under the plan, the Bureau reviews an inmate's financial obligations and establishes a plan for payment of "legitimate financial obligations." These obligations are either court-ordered obligations or debts owed the federal government. *See id.* at § 545.11(a). Inmates with work assignments and compensation provided by Federal Prison Indus-

tries, Incorporated (also commonly known as "UNICOR," *see id.* at § 345.11(a)) who fail to demonstrate financial responsibility by meeting these obligations can be removed from their UNICOR jobs or be paid at only a maintenance level. *See id.* at § 545.11(c).

In December 1986, plaintiff advanced to UNICOR "Grade 1" level and was paid $180 a month. Out of his monthly earnings, he made voluntary family support payments of $125. *See* Declaration of July 14, 1988 of Plaintiff Darrell Prows ("Prows Declaration") at ¶¶ 1, 9. Plaintiff and his family are indigent. *See id.* at ¶¶ 10, 13. Under the IFRP Pilot Program, these voluntary family support payments were considered "legitimate financial obligations." Thus, plaintiff's contributions to his family constituted a showing of financial responsibility sufficient to retain his UNICOR job. The final IFRP rule, however, added court-ordered support payments to the list of legitimate obligations, and the Bureau ruled that, therefore, voluntary support payments, such as those made by plaintiff, did not qualify as "legitimate financial obligations" within the meaning of 28 C.F.R. § 545.10. *See* Memorandum of Points and Authorities in Support of Plaintiff's Amended Motion for Summary Judgment ("Plaintiff's Memorandum"), Exhibit D at 4.

On March 27, 1987, the Bureau issued Program Statement 5380.1, which was not itself part of the notice and comment process that resulted in the final IFRP rule. That Statement declares that UNICOR inmates at grades 1 to 4 "will be expected to allot not less than 50% of their monthly pay" to the payment of "legitimate" financial obligations. The only legitimate financial obligation the Bureau recognized for plaintiff was his court-imposed criminal fine. *See id.,* Exhibit C at 3–6, Exhibit D at 3–5. While plaintiff repeatedly sought an administrative interpretation of the final IFRP rule, he refused to pay 50% of his earnings to satisfy the criminal fine. Instead, he sought to comply with the IFRP by continuing to send voluntary support payments to his indigent family, an obligation he found quite "legitimate." Plain-

tiff lost all four of his administrative appeals and was fired from his UNICOR job on May 12, 1987, for failing to meet his IFRP financial obligations. *See id.,* Exhibits B–D; Prows Declaration at ¶¶ 1, 2.

Plaintiff's Amended Motion for Summary Judgment raises five objections to the Bureau's actions. First, plaintiff argues that the Bureau lacks the statutory authority to promulgate the IFRP rule. Second, plaintiff asserts that the Bureau's decision to make the final IFRP rule effective immediately upon publication violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(d), because the waiver of the standard 30–day waiting period was without good cause. Third, plaintiff characterizes Program Statement 5380.1 as a substantive, rather than an interpretative, rule adopted without the notice and comment rulemaking procedures mandated by the APA, 5 U.S.C. §§ 553(b) & (c). Fourth, plaintiff claims that the IFRP and Program Statement 5380.1 violate his right to equal protection because they fail to distinguish between indigent and non-indigent inmates in spite of the disparate impact of the regulations on those groups. Finally, plaintiff argues that defendants terminated his UNICOR employment without due process of law.

## I.

█ On the question of the Bureau of Prisons' statutory authority to promulgate the IFRP rule, defendants cite a number of cases standing for the proposition that a prisoner does not have a constitutional right to a particular job at a particular wage. *See* Memorandum in Support of Defendants' Motion to Dismiss First Amended Complaint and in Opposition to Plaintiff's Amended Motion for Summary Judgment ("Defendants' Memorandum") at 7–9. But the absence of a constitutional right to prison employment, argues plaintiff, is irrelevant to the absence of statutory authority to implement these particular prison rules. The Bureau, however, has been given explicit statutory authority to "have charge of the management and regulation of all Federal penal and correctional institu-

tions" and to "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042. Even more broadly, the Attorney General has been given statutory authority to provide for the "proper government, discipline, treatment, care, rehabilitation, and reformation" of all federal inmates. *Id.* at § 4001. This specific statutory authority has, in turn, been delegated to the Bureau of Prisons. *See* 28 C.F.R. § 0.96(q). The authority has been consistently held to be extremely broad. *See, e.g., Sellers v. Ciccone*, 530 F.2d 199, 201, 204 (8th Cir.1976); *Rene v. Federal Prison Indus., Inc.*, 546 F.Supp. 480, 481 (S.D.N.Y.1982).

The Inmate Financial Responsibility Program, which encourages each federal inmate "to satisfy his legitimate financial obligations" so as to demonstrate his "acceptance of responsibility," 28 C.F.R. § 545.10, falls within the Bureau's authority to provide for, *inter alia*, the rehabilitation and reformation of federal inmates. The primary purpose of the IFRP is neither fine collection nor management of the employees of Federal Prison Industries, Inc., as plaintiff argues. Criminal fines are only a single type of legitimate financial obligation recognized by the IFRP. The Program recognizes five other types of obligations. Furthermore, although the IFRP does threaten inmates who fail to demonstrate financial responsibility by making adequate progress on their financial plans with the loss of UNICOR employment, that threat does not automatically mean that only Federal Prison Industries, Inc., may promulgate such a regulation. There are many reasons for which the Bureau of Prisons might decide that certain groups of inmates should not be eligible for UNICOR employment. Provided that the Bureau is within its very broad statutory authority, *see* 18 U.S.C. § 4042; 28 C.F.R. § 0.96, it may condition UNICOR employment. The existence of additional statutory authority by Federal Prison Industries, Inc., to condition UNICOR employment does not thereby negate the Bureau's authority. For example, the authority of Federal Prison Industries, Inc., to declare an inmate ineligi-

ble for UNICOR compensation due to poor work performance does not logically mandate the loss of the Bureau's power and authority to discipline inmates for misconduct by dismissing them from their UNICOR assignments. *See* 28 C.F.R. § 345.12. Therefore, pursuant to 18 U.S.C. §§ 4001, 4042 and 28 C.F.R. § 0.96(q), the Bureau of Prisons has the statutory authority to condition UNICOR employment on an inmate's demonstration of financial responsibility as set forth in the Inmate Financial Responsibility Program. Count one of plaintiff's First Amended Complaint must be dismissed for failure to state a claim upon which relief can be granted.

## II.

■ Plaintiff's claim that defendants violated 5 U.S.C. § 553(d) because they implemented the IFRP immediately, although persuasive, cannot succeed because plaintiff lacks standing to challenge that particular violation of the Administrative Procedure Act. In pertinent part, § 553(d) provides:

> The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except ... as otherwise provided by the agency for good cause found and published with the rule.

The IFRP was implemented on April 1, 1987. Even if plaintiff can adequately demonstrate that defendants had no good cause to waive the statutory 30-day waiting period, the appropriate relief would be to declare the regulations invalid for the period from April 1 to May 1, 1987, and valid thereafter. *See Lewis–Mota v. Secretary of Labor*, 469 F.2d 478, 482 (2d Cir. 1972). Plaintiff, however, was fired on May 12, 1987. Even had defendants fully complied with 5 U.S.C. § 553(d), plaintiff still could have been fired legally on May 12, 1987. Because plaintiff has not demonstrated any "injury in fact" from the alleged violation of § 553(d), he does not have standing to bring that claim. *See Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); P. Bator, D. Meltzer, P. Mishkin, & D. Shapiro, Hart

& Wechsler's The Federal Courts and the Federal System 123–25 (3d ed. 1988).

Although plaintiff alleges two types of injuries based on the alleged violation of § 553(d), neither amounts to injury in fact. The first alleged injury was that the IFRP's immediate implementation "foreclos[ed] any opportunity to comment on those aspects of the final rule that were materially different from the proposed rule." First Amended Complaint at ¶ 38. The APA, however, does not require agencies to provide opportunities to comment on changes between proposed and final rules upon the publication of final rules. Plaintiff had ample opportunity during the original notice and comment period to comment on the possibility of no longer considering voluntary family support payments to be "legitimate financial obligations." Plaintiff has not challenged the adequacy of these notice and comment procedures. Defendants' alleged failure to comply with 5 U.S.C. § 553(d) could not injure plaintiff "in fact" by preventing him from commenting on the final rule because plaintiff had no right under the APA to comment after final publication.

Plaintiff's second alleged injury is that immediate implementation foreclosed any opportunity to "prepare for the adjustments in his occupational, financial, and personal status." First Amended Complaint at ¶ 38. But § 553(d) only requires an agency to provide at most 30 days for affected individuals to adjust to new regulations. Plaintiff had more than 30 days to adjust and, hence, cannot allege any injury in fact on this claim. Therefore, count two of plaintiff's First Amended Complaint must be dismissed for lack of standing.

### III.

Plaintiff's challenge to the issuance and implementation of Program Statement 5380.1 without notice and comment rulemaking procedures, however, is well taken. Plaintiff argues that the 50% rule of Program Statement 5380.1, *i.e.*, that UNICOR employee inmates at grades 1–4 must pay at least 50% of their earnings to satisfy "legitimate" obligations, has been given the force of law. As such, plaintiff contends, the 50% rule should be subject to the administrative rulemaking procedures —namely notice and comment—required by 5 U.S.C. §§ 553(b) & (c). Defendants do not dispute that the Program Statement was not promulgated pursuant to 5 U.S.C. § 553, but argue that the statement is not a substantive rule but is an "interpretation of what payments would be appropriate for inmates working in [UNICOR] jobs with pay grades of 1 to 4." Defendants' Memorandum at 14.

Defendants' argument is unpersuasive. Although the Program Statement provides that inmates "will be expected" to allot 50% of their earnings to the payment process, this "expectation" has been given the force of law. Plaintiff's firing from his grade 1 UNICOR employment was based entirely on his failure to abide by this 50% rule. As the Bureau of Prisons' Regional Director stated in his July 8, 1987 denial of one of plaintiff's administrative appeals:

> Being a Grade 1 in UNICOR, policy requires a *minimum* contribution of 50% of earnings towards satisfaction of a fine. Failure to do so may result in removal from UNICOR. Staff acted within policy reference [sic] your removal.... Succinctly, you had $90.00 per month left to share between your wife and determined personal needs.

Plaintiff's Memorandum, Exhibit C at 3. Defendants have not used the Program Statement merely to interpret the language of the IFRP. Rather, Program Statement 5380.1 has been itself interpreted by defendants as an absolute rule that substantially affects the rights of those subject to it. If a grade 1 to 4 UNICOR employee does not contribute at least 50% of his UNICOR income toward satisfaction of his legitimate obligations, *i.e.*, criminal fines but not voluntary family support payments, he can be, and in this case was, fired on that basis alone. Defendants have not pointed to any instances in which they have varied from this 50% rule.

In *Pickus v. United States Bd. of Parole*, 507 F.2d 1107 (D.C.Cir.1974), the Court of Appeals for this Circuit held that

guidelines specifying the factors the Board of Parole would consider "in the exercise of its discretion to parole eligible federal prisoners" were substantive rules not exempt from the notice and comment rulemaking requirements of 5 U.S.C. § 553. The guidelines "were of a kind calculated to have a substantial effect" on the parole board's ultimate decisions, and those guidelines found to be "formula like" were deemed to have an even greater impact. *Id.* at 1112, 1113. Here, Program Statement 5380.1 has been interpreted by defendants in a "formula like" manner and has been used to affect substantially UNICOR employment decisions. It is neither an interpretative rule nor a general statement of policy. *See id.* Because exceptions to the APA's notice and comment requirements should be narrowly construed, *see New Jersey v. United States Envtl. Protection Agency*, 626 F.2d 1038, 1045 (D.C.Cir.1980), Program Statement 5380.1 must be deemed a substantive rule that should have been promulgated pursuant to 5 U.S.C. § 553(b) & (c).

Thus, because there is no genuine dispute as to the material facts of this claim and plaintiff is entitled to prevail as a matter of law, the accompanying Order will grant plaintiff's motion for summary judgment as to count three and provide appropriate relief. Specifically, the Order will declare Program Statement 5380.1 null and void. Having declared the Program Statement to be null and void, there is no reason for the Court to issue any general injunction against its continued enforcement. It is to be expected that the Department of Justice and the Bureau of Prisons will follow the law as here declared, unless and until further ordered by this Court, or by an appellate court staying or reversing this declaration. If an injunction should later prove necessary, plaintiff has demonstrated his ability to apply for one.

Furthermore, because the only reason given for plaintiff's firing from his UNICOR work assignment was his failure to comply with Program Statement 5380.1, the accompanying Order will also declare that plaintiff was fired pursuant to an illegally promulgated regulation and will order defendants to restore him to a UNICOR grade 1 work assignment and pay level and to provide plaintiff with back pay from the date of his firing, May 12, 1987, to the date of his grade 1 reassignment.

## IV.

Because the accompanying Order provides plaintiff with reinstatement and back pay, any relief that might have been available under plaintiff's due process or equal protection claims has already been provided. When adequate relief is available based on common law or statutory grounds, courts must refrain from unnecessarily deciding constitutional issues. In addition, both the due process and the equal protection claims are premised on the joint impact that Program Statement 5380.1 and the IFRP had on plaintiff's dismissal from UNICOR. *See* Plaintiff's Memorandum at 27, 33–38. Because Program Statement 5380.1 has been declared null and void, there may no longer be any constitutional problems. If plaintiff believes that any future combination of regulations violates the United States Constitution, he may bring a suit at that time challenging that particular combination. The combination of which he complains in this action no longer exists.

## V.

In conclusion, this decision is a limited one. Although Program Statement 5380.1 must be declared null and void, the balance of the Inmate Financial Responsibility Program, as codified at 28 C.F.R. § 545.10 *et seq.*, remains in effect. No constitutional issues were decided. Furthermore, this decision affects only those inmates who were fired from UNICOR grade 1 to 4 jobs based *exclusively* on their failure to comply with Program Statement 5380.1. There is no reason to believe that this is a large group of inmates or that the accompanying Order will produce cataclysmic difficulties for the Bureau of Prisons.

## ORDER

For the reasons stated in the accompanying Memorandum, it is this 20th day of December, 1988, hereby

278

ORDERED: that defendants' motion to dismiss should be, and is hereby, GRANTED as to counts one and two and DENIED in all other respects; and it is further

ORDERED: that plaintiff's motion for summary judgment should be, and is hereby, GRANTED as it applies to count three of the First Amended Complaint; and it is further

ORDERED: that Program Statement 5380.1 should be, and is hereby, declared to be a substantive rule not adopted pursuant to the requirements of 5 U.S.C. §§ 553(b) & (c) and should be, and is hereby, declared null and void; and it is further

ORDERED: that it should be, and is hereby, declared that plaintiff was fired pursuant to an illegally promulgated regulation; and it is further

ORDERED: that defendants restore plaintiff to a UNICOR grade 1 work assignment and pay level and provide to plaintiff back pay from May 12, 1987, to such time as plaintiff is restored to grade 1 status. The back pay shall consist of the difference between the income plaintiff would have received during that period had he remained at a grade 1 level and the income he actually received during that period.