**JAMES, Raymond Edward and Freeland, Daniel Carlton**

v.

**QUINLAN, J. Michael, Dir. Bureau of Prisons, Meese, Edwin M. III, U.S.A. Attorney General, West, James J., U.S. Attorney.**

**Appeal of Raymond Edward JAMES and Daniel Carlton Freeland.**

**No. 88–5582.**

United States Court of Appeals, Third Circuit.

Submitted Dec. 20, 1988.

Decided Jan. 30, 1989.

mates at the United States Penitentiary at Lewisburg, Pennsylvania, bring this suit which challenges the constitutionality of the Federal Bureau of Prisons' Inmate Financial Responsibility Program and argues that it was not enacted in accordance with the provisions of the Administrative Procedures Act, 5 U.S.C. § 500 *et seq.* Plaintiffs also argue on appeal that the district court erred by not ordering that they be provided with a copy of unpublished district court opinions that were cited in the magistrate's Report and Recommendation and later cited by the district court in its opinion.

## II.

Plaintiffs are both employed at the United States Penitentiary at Lewisburg, Pennsylvania, in Federal Prison Industries (UNICOR) job assignments. A Federal Prison Industries job assignment is an assignment within the prison's industrial location. 28 C.F.R. § 545.50 (1988). It is considered by many inmates to be more desirable than other types of work assignments, for example, institution work assignments, which are assignments that contribute to the day-to-day operation of the prison. 28 C.F.R. § 545.21(b) (1988). In 1987, the federal prison system adopted the Inmate Financial Responsibility Program, now codified at 28 C.F.R. §§ 545.10 and 545.11 (1988). This program provides for inmates to work with prison staff to develop a financial responsibility plan, with the goal of paying their court-ordered obligations.[1] The program provides that inmates who fail to demonstrate financial responsibility may not secure a UNICOR work assignment or receive performance pay above the maintenance pay level. The program also provides that "[a]n inmate already in a UNICOR work assignment or receiving performance pay who fails to make adequate progress on the financial

Raymond Edward James, Lewisburg, Pa., appellant pro se.

Daniel Carlton Freeland, Lewisburg, Pa., appellant pro se.

James J. West, U.S. Atty., Robert J. DeSousa, Asst. U.S. Atty., Scranton, Pa., for appellees.

Before MANSMANN, HUTCHINSON and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

## I.

Plaintiffs-appellants, Raymond Edward James and Daniel Carlton Freeland, in-

---

1. The program provides that the financial responsibility plan shall include the following obligations, in priority order:

 1) special assessments imposed under 18 U.S.C. § 3013;
 2) court-ordered restitution;
 3) fines and court costs;
 4) judgments in favor of the United States;
 5) other debts owed the federal government; and
 6) other court-ordered obligations.

28 C.F.R. § 545.11(a) (1988).

plan will be considered for removal from UNICOR, or reduction to the maintenance pay level of performance pay." 28 C.F.R. § 545.11(c) (1988).

Plaintiffs contend that they were thereafter faced with a choice of signing an authorization which gave prison officials the authority to take fifty percent of their income and fifty percent of the moneys in their prison trust fund accounts attributable to their previous prison earnings, and apply it towards their financial obligations, or of losing their Federal Prison Industries job assignments. Plaintiffs signed the authorizations and brought suit in the United States District Court for the Middle District of Pennsylvania *in forma pauperis*, alleging that their due process rights were violated and that the Inmate Financial Responsibility Program was adopted in violation of the Administrative Procedures Act. The case was referred to a magistrate, who issued a report recommending dismissal of plaintiff's lawsuit pursuant to 28 U.S.C. § 1915(d) as frivolous. The report cited two unpublished district court decisions of the Middle District of Pennsylvania dismissing similar suits. Plaintiffs then moved for an extension of time to file objections until ten days after such time as they were provided copies of the two unpublished opinions cited in the magistrate's report. The district court granted plaintiffs a ten-day extension of time to file objections, but ruled that they would have to obtain the unpublished opinions themselves. Plaintiffs subsequently filed objections to the magistrate's report. The district court dismissed plaintiffs' complaint in an opinion filed May 26, 1988, which used as authority in part the two unpublished decisions cited in the magistrate's report. Plaintiffs now appeal.

### III.

Plaintiffs first argue that their Fifth Amendment right to due process of law was violated because they were forced to sign authorizations giving prison authorities the right to withhold fifty percent of their prison wages and apply it toward their obligations under threat of losing their Federal Prison Industries job assignments. To the degree that the federal prisons' Inmate Financial Responsibility Program required this, they assert it is unconstitutional.

In order for plaintiffs to state a cognizable claim that they were deprived of wages without due process of law, they must have either a liberty or a property interest in their Federal Prison Industries job assignments. A liberty interest in a prison condition can arise in two ways. It can arise from the Due Process Clause itself or from laws regulating the treatment of prisoners which use language of a mandatory character, such as the words "shall," "will" or "must," to restrict the freedom of prison authorities to make such decisions. *Hewitt v. Helms*, 459 U.S. 460, 466 & 469–72, 103 S.Ct. 864, 868 & 870–71, 74 L.Ed.2d 675 (1983).

The Supreme Court has held that " 'as long as the conditions or degree of confinement to which ... [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.' " *Id.* at 468, 103 S.Ct. at 869 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)). Incarceration without being assigned a job is within the sentence imposed upon plaintiffs and there is no indication that it is here otherwise violative of the Constitution. *See generally* Note, *The Prisoner's Paradox: Forced Labor and Uncompensated Injuries*, 10 New Eng.J. on Crim. & Civ. Confinement 123, 128–29 (1984); *Banks v. Norton*, 346 F.Supp. 917, 921 (D.Conn.1972). Accordingly, we hold that plaintiffs have no liberty interest in their Federal Prison Industries job assignments arising directly from the Due Process Clause itself.

We turn then to see if a federal statute gives plaintiffs a liberty interest in their Federal Prison Industries job assignments through the use of the mandatory language found in *Hewitt*. We have found

no statute that does so, nor have plaintiffs brought one to our attention. We also note that another circuit has found that federal statutes do not give prisoners a liberty interest in their employment. *See Garza v. Miller,* 688 F.2d 480, 484–86 (7th Cir.1982), *cert. denied,* 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983). Therefore, we hold that plaintiffs have no liberty interest in their Federal Prison Industries job assignments arising from federal statute.

While we think that a federal prison regulation might give a prisoner a liberty interest in his or her employment as against contravening acts by prison officials, we do not think that it can do so against a superseding prison regulation, since to rule otherwise could result in effectively prohibiting a prison regulation from ever being amended. However, we note that in any event we have found no mandatory language in the prison regulations prior to the enactment of the Inmate Financial Responsibility Program that would give plaintiffs a liberty interest in their Federal Prison Industries job assignments through the use of the mandatory language found in *Hewitt. See* 28 C.F.R. §§ 545.20–545.64 (1986). Therefore, we hold that plaintiffs do not have a liberty interest in those assignments arising from prison regulations.

■ Having thus found that plaintiffs do not have a liberty interest in their Federal Prison Industries job assignments, we turn to see whether they have a property interest in them. The Supreme Court has noted:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). *See also Chabal v. Reagan,* 841 F.2d 1216, 1223 (3d Cir.1988) (same). Traditionally, prisoners have had no entitlement to a specific job, or even to any job. *See* Note, *supra* at 128–29. *See also generally Bryan v. Werner,* 516 F.2d 233, 240 (3d Cir.1975); *Banks v. Norton, supra* at 921. Nor, as we have discussed, does federal statute or regulation give them one. Accordingly, we hold that plaintiffs have no property interest in their Federal Prison Industries job assignments.

■ Additionally, even had we found that plaintiffs have a constitutional right in their Federal Prison Industries job assignments, inmates' constitutional rights may be impinged by a prison regulation if it is reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987). Here the Inmate Financial Responsibility Program would appear to be reasonably related to a legitimate penological interest in encouraging inmates to rehabilitate themselves by developing a sense of financial responsibility. Therefore, even if plaintiffs had established the existence of a constitutional right in their Federal Prison Industries job assignments, it would not be violated by the Inmate Financial Responsibility Program.

We turn now to plaintiffs' argument that being required to assign one-half of their savings from prior prison work in order to continue in their Federal Prison Industries job assignments violated their due process rights. As we have held, plaintiffs have no constitutional right in remaining in their Federal Prison Industries job assignments. Therefore, plaintiffs could be presented with a choice of assigning one-half of their prior savings or losing their Federal Prison Industries job assignments without any violation of their constitutional rights occurring. They simply volunteered to assign one-half of their prior savings in order to meet the conditions for continuing to remain in their Federal Prison Industries job assignments.

## IV.

■ Plaintiffs next argue that the Inmate Financial Responsibility Program was improperly adopted because the notice provisions of the Administrative Procedures Act, 5 U.S.C. § 500 *et seq.*, were not complied with. The Administrative Procedures Act generally requires notice of proposed rulemaking to be published in the Federal Register and to include either the terms or substance of the proposed rule or a description of the subjects and issues involved. 5 U.S.C. § 553(b)(3). This circuit has held that "the adequacy of the notice must be tested by determining whether it would fairly apprise interested persons of the 'subject and issues' before the agency," and that "the submission of a proposed rule for comment does not of necessity bind an agency to undertake a new round of notice and comment before it adopts a rule which is different—even substantially different—from the proposed rule." *American Iron & Steel Institute v. Environmental Protection Agency*, 568 F.2d 284, 293 (3d Cir.1977) (citation omitted).

Prior to the adoption of the Inmate Financial Responsibility Program, a proposed rule was published in the Federal Register. 51 Fed.Reg. 42,167 (1986). The proposed rule stated that the Bureau of Prisons was going to adopt the Inmate Financial Responsibility Program. The proposed rule also stated that "[a]n inmate already in UNICOR work assignments or receiving performance pay who fails to make adequate progress on the financial plan will be considered for removal from UNICOR or reduction to the maintenance pay level of performance," and that "[t]he minimal amount of payment that may be made by a participant will be set by the Assistant Director, Correctional Programs Division." [2]

Plaintiffs argue that the proposed rule's failure to mention that there would be an expected allotment of not less than fifty percent of an inmate's monthly pay resulted in inadequate notice under 5 U.S.C. § 553(b). However, as we have noted, the proposed rule stated that the "minimal amount of payment that may be made by a participant will be set by the Assistant Director, Correctional Programs Division." Therefore, applying *American Iron & Steel Institute*, we hold that the proposed rule fairly apprised interested persons of the " 'subject and issues' before the agency." Accordingly, we hold that the Inmate Financial Responsibility Program was properly enacted in accordance with the Administrative Procedures Act.

## V.

■ Plaintiffs' last argument is that the district court erred by not ordering that they be provided with a copy of unpublished district court opinions that were cited in the magistrate's report and later cited by the district court in its opinion. However, we believe that the district court would have reached the same decision even without reference to the unpublished opinions. Indeed, we are affirming its judgment in this opinion without reference to any of the unpublished opinions. Therefore, we hold that any error the district court may have made was harmless pursuant to Federal Rule of Civil Procedure 61, and is not grounds for "modifying or otherwise disturbing" its order dismissing plaintiffs' complaint.

## VI.

For all of the foregoing reasons, we hold that the Federal Bureau of Prisons' Inmate Financial Responsibility Program did not deprive plaintiffs of their due process rights; that it was properly enacted in accordance with the provisions of the Administrative Procedures Act; and that any error in the district court's decision not to provide plaintiffs with copies of the unpublished district court opinions that it relied on was harmless. Accordingly, the deci-

---

**2.** The proposed rule was later amended to provide that the staff who review an inmate's financial plan will have the flexibility to develop with the inmate a schedule to meet his or her financial obligations, instead of having the amount set by the Assistant Director of the Correctional Programs Division. 50 Fed.Reg. 10,528 (1987) (codified at 28 C.F.R. §§ 545.10 & 545.11).

sion of the district court dismissing plaintiffs' complaint will be affirmed.