**Thomas M. PHILLIPS, Petitioner,**

**v.**

**J.W. BOOKER, Warden, Respondent.**

**No. 98–3314–RDR.**

United States District Court,
D. Kansas.

Nov. 19, 1999.

1184

Thomas M. Phillips, Leavenworth, KS, pro se.

Mary K. Ramirez, Office of United States Attorney, Topeka, KS, for JW Booker, Warden, respondent.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by an inmate of the United States Penitentiary, Leavenworth, Kansas. Phillips asserts that he is challenging the execution of his sentence on the basis that the Bureau of Prisons has improperly delegated payments of court-ordered restitution through the Inmate Financial Responsibility Program (IFRP). Phillips seeks to have his sentence vacated. He further seeks to be resentenced "without the delegation of restitution" to the BOP. He wants to "maintain his status within Unicor," but have the BOP cease all IFRP deductions, and not retaliate.

Petitioner was granted leave to proceed in forma pauperis, and an order to show cause issued. Respondent filed an Answer and Return to which petitioner filed a Response. Having considered all pleadings and attachments in the file together with the criminal file [*U.S. v. Phillips*, D.C. No. 95–10044–01 (D.Kan.)] containing the Judgment, the transcript of sentencing and the plea agreement, the court makes the following findings and order.

## FACTS

The court finds the facts to be as follows. Pursuant to a plea agreement, petitioner pled guilty to one count of bank robbery and one count of using a firearm during a crime of violence. On December 1, 1995, he was sentenced to 138 months in prison and five years of supervised release.

The "Judgment in a Criminal Case" (Crim.file, Doc. 27), is a form order. On page 4 of the Judgment, a box is marked indicating that "defendant shall make restitution to the following payees in the amounts listed below." The Amount of Loss and the Amount of Restitution Ordered are listed as $3,870.00. On page 5 of the Judgment, under "Schedule of Payments" which provides "Payment of the total ... shall be due as follows," the box has been marked: "A. in full immediately...." Although there were options specifying installments, they were not marked by the court. A footnote at the bottom of the page provides:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment *payment of criminal monetary penalties shall be due during the period of imprisonment.* (Emphasis added). All criminal monetary penalty payments are to be made to ... (address given) .., except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program.

Petitioner did not object concerning the restitution portion of this criminal judgment at the sentencing proceeding or by

direct appeal. On June 17, 1997, he filed a Motion to Suspend, Vacate or Reschedule Restitution Payments before the sentencing court (Crim.file, Doc. 30). He asserted jurisdiction under 18 U.S.C. § 3664(a). In that motion Phillips stated:

> Movant was deemed indigent by this court. To be ordered to pay said restitution immediately, ... created a hardship on him. The court assumed ... that movant would be able to earn monies working for the B.O.P. while incarcerated, and therefore gave it's immediate payment order based on that ... speculation.

(Crim.file, Doc. 30, p. 2). Petitioner also complained in the motion that the court lacked authority to delegate the setting of a payment plan to the BOP and that the IFRP is discriminatory and coercive. The sentencing court denied this motion (Crim. file, Doc. 31), on the ground that it had no authority to change the restitution order because Phillips had not alleged a material change in his economic circumstances.

Phillips appealed the denial. The Tenth Circuit Court of Appeals opined that Phillips "raises a serious issue in his motion to the district court...." However, the Circuit dismissed the appeal on the ground that it could not reach the merits, because the district court lacked jurisdiction to consider the motion. The Circuit reasoned that 18 U.S.C. § 3664, cited by petitioner, is not a jurisdictional statute. Nevertheless, because Phillips was proceeding pro se, the court construed Phillips motion liberally and examined "whether the district court could exercise jurisdiction over Defendant's motion *by any other means* (emphasis added)." (Crim.file, Doc. 43, p. 3). The Circuit concluded that the motion could not be considered a timely appeal, a timely Rule 35(c) motion, or a timely motion to vacate or correct sentence under 28 U.S.C. § 2255.

Phillips is employed at the USP, Leavenworth, in a Federal Prison Industries (UNICOR) job assignment. He apparently was given the choice of signing an authorization permitting prison officials to take fifty percent of his income and apply it towards his financial obligations, or of not participating in UNICOR. He chose to sign the authorization and participate.

The IFRP first became effective in 1987, to encourage inmates to meet their "legitimate financial obligations." 28 C.F.R. § 545.10; *Prows v. Dept. of Justice,* 938 F.2d 274, 275 (D.C.Cir.1991); *Kelley v. Federal Bureau of Prisons,* 835 F.Supp. 1316, 1317 (D.Kan.1993) *aff'd* 21 F.3d 1121 (10th Cir.1994, Table). Under the IFRP, as a part of initial classification, staff assist the inmate in developing a financial plan; and inmates with UNICOR work assignments are required to devote a portion of their earnings toward their "legitimate financial obligations." 28 C.F.R. § 545.11(a)[1]; *Prows,* 938 F.2d at 275; *Kelley,* 835 F.Supp. at 1317. Court-ordered restitution is specifically included among the obligations that are subject to collection through the IFRP. 28 C.F.R. § 545.11(a)(2). "Inmates assigned grades 1 through 4 in UNICOR ordinarily will be expected to allot not less than 50% of their monthly pay" toward their obligations. 28 C.F.R. § 545.11(b)(2). Refusal to participate in the IRFP "ordinarily shall" result in removal from UNICOR with performance pay at a maintenance level only, along with notification to the Parole Commission of non-participation, denial of furlough and outside work detail, restrictions on purchases and future UNICOR placement, lowest status housing and denial of other incentives. 28 C.F.R. § 545.11(d).

## EXHAUSTION

Respondent answers the petition only by asserting that the action should be dismissed because administrative remedies have not been exhausted. As respondent points out, the Bureau of Prisons has established administrative remedy proce-

---

1. 28 C.F.R. § 545.11 is reflected in Federal Bureau of Prisons Program Statement 5380.02. *Kelley,* 835 F.Supp. at 1318.

dures by which a federal inmate may seek formal review of a complaint relating to imprisonment. Petitioner alleges that he initiated administrative grievances at the BP–8 and BP–9 levels, but was informed that if he persisted it would be construed as refusal to participate in the IFRP program, he would be removed from Unicor, and receive pay at maintenance level only. Petitioner decided to discontinue the administrative process and proceed to federal court.

It is clear that Phillips has not fully utilized the administrative remedy process. However, he seeks exception to the requirement of exhaustion by contending that the process is futile, that the warden has refused to provide him with a written response to his BP–8, and that forms have been withheld.

■ Although this court ordinarily will dismiss a habeas action when an inmate has not completed the BP–9, 10 and 11 steps of the process, it is not convinced that exhaustion should be required under these facts. Here, the petition raises only issues of law upon which respondent has already articulated its position as that mandated by BOP regulations. Consequently, exhaustion of administrative remedies would be a futile exercise. *See Alevras v. Snyder,* 49 F.Supp.2d 1112, 1113 (E.D.Ark.1999). Moreover, there is no function to be served by further development of the factual record. *See Mujahid v. Crabtree,* 999 F.Supp. 1398, 1399 (D.Or. 1998) *aff'd,* 172 F.3d 57 (9th Cir.1999, Table). For these reasons, the court declines to dismiss this action for failure to exhaust alone. Nevertheless, for the following reasons the court finds that petitioner is not entitled to habeas corpus relief.

## JURISDICTION

First, this court is not convinced that it has jurisdiction to grant the relief petition-er seeks. The instant petition seeks essentially the same relief on the same grounds raised by petitioner in the motion to the sentencing court. Given that the Tenth Circuit Court of Appeals could find no means by which the sentencing court could exercise jurisdiction over petitioner's earlier motion, it seems unlikely that this court has jurisdiction.

A major premise of petitioner's complaint is that the sentencing court violated 18 U.S.C. § 3664(a) by failing to consider "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents...." Petitioner asks this court to vacate his sentence and order that he be resentenced. This clearly amounts to an attack upon the validity of the sentence which may be raised only on appeal or by § 2255 motion. Consideration of a direct appeal or § 2255 motion has already been precluded as untimely [2] by the Circuit.

■ Not surprisingly, this petition is not brought under § 2255 or any of the jurisdictional statutes already rejected by the Tenth Circuit. Instead, jurisdiction is asserted under 28 U.S.C. § 2241. The Tenth Circuit has stated that: "A petitioner under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity...." *Bradshaw v. Story,* 86 F.3d 164, 166 (10th Cir.1996). Section 2255 contains language which allows an application by an inmate for habeas relief if it appears that "the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention." However, a petition under § 2241 is not an additional, alternative, or supplemental remedy to 28 U.S.C. § 2255. *Id.; Williams v. United States,* 323 F.2d 672, 673 (10th Cir.1963) *(per curiam),* cert. denied, 377 U.S. 980, 84 S.Ct. 1887, 12 L.Ed.2d 749 (1964); *Caravalho v. Pugh,* 177 F.3d 1177, 1178 (10th Cir.1999).

---

2. In *United States v. Simmonds,* 111 F.3d 737, 746 (10th Cir.1997), the court held that prisoners convicted on or before April 24, 1996 (effective date of AEDPA), must file their § 2255 motions before April 24, 1997, due to the Act's one-year limitation period on such motions. Petitioner's first motion was not filed until June, 1997. But for the AEDPA, the merits of petitioner's claims could have been considered by the sentencing court as a § 2255 motion claiming plain error and by the Tenth Circuit on appeal.

Failure to obtain relief under 2255 does not establish that the remedy so provided is either inadequate or ineffective. *Id.*

██ The claims in this petition attacking the validity of the sentence cannot now be considered under § 2255, the proper avenue, and are not appropriate grounds for relief under § 2241. The fact that Phillips was denied relief on these claims as untimely does not establish that § 2255 was an inadequate remedy so that he may now be heard under § 2241.

## MERITS OF § 2255 CLAIMS

Even if this court were somehow found to have authority to consider the merits of petitioner's § 2255 claims, under the appropriate standards relief would be denied. The Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663–3664, governs the restitution order in this case[3] since it was in effect at the time of Phillips' offense and conviction. "Congress enacted the VWPA for the purpose of compensating crime victims." *United States v. Clark*, 901 F.2d 855, 856 (10th Cir.1990); *United States v. Teehee*, 893 F.2d 271, 274 (10th Cir.1990). Section 3663(a) of the VWPA "empowers a district court to impose restitution in the appropriate case." *Id.* Subsection 5E1.1 of the United States Sentencing Commission Guidelines requires a court to impose restitution for offenses under Title 18 unless "the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution ... outweighs the need to provide restitution to any victims." *Id., citing* 18 U.S.C. § 3663(d); *United States v. Fuentes*, 107 F.3d 1515, 1527, 1533 (11th Cir.1997). Section 3553(c), 18 U.S.C., requires the court to explain why partial or no restitution is ordered. Thus, under the VWPA, while restitution is not mandatory, a court's authority to deny restitution is limited. *Clark*, 901 F.2d at 856.

Section 3664(a), 18 U.S.C., provides that the court, "in determining whether to order restitution" ... "shall consider" the amount of loss sustained as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, as well as other factors deemed appropriate by the court. *See also* 18 U.S.C. § 3663(a)(1)(B)(i). After considering the evidence, the sentencing court may (1) impose restitution payable immediately, (2) impose restitution within a specified period or specified installments, (3) order the defendant to perform services for the benefit of the victim in lieu of monetary restitution, or (4) decline to impose restitution. *United States v. McIlvain*, 967 F.2d 1479, 1480 (10th Cir.1992).

██ It is well settled that under VWPA, a restitution order must be consistent with a defendant's ability to pay. *See United States v. Olson*, 104 F.3d 1234, 1237 (10th Cir.1997), *citing United States v. Gilbreath*, 9 F.3d 85, 86 (10th Cir.1993); *McIlvain*, 967 F.2d at 1481. However, the fact that a defendant lacks financial resources at the time of sentencing is not itself a bar to a restitution order. *See id., United States v. Gabriele*, 24 F.3d 68, 73 (10th Cir.1994); *United States v. Rogat*, 924 F.2d 983, 985 (10th Cir.) *cert. denied* 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991); *United States v. Logar*, 975 F.2d 958, 962 (3d Cir.1992) (and cases cited therein). Moreover, a sentencing court is not required to make specific findings as to a defendant's ability to pay, provided that sufficient information was available to, and considered by, the court. *See United States v. Kunzman*, 54 F.3d 1522, 1532 (10th Cir.1995); *United States v. Coleman*, 9 F.3d 1480, 1486 (10th Cir.1993) *cert. denied* 510 U.S. 1184, 114 S.Ct. 1234, 127 L.Ed.2d 578 (1994); *United States v. Haddock*, 50 F.3d 835, 837 (10th Cir.1995). If no assets exist at the time of sentencing,

---

**3.** The Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, which mandates full restitution without consideration of a defendant's ability to pay, does not apply to convictions preceding the date of enactment, April 24, 1996.

the court considers "whether there is sufficient 'earning potential' or 'earning ability' to create an objectively-reasonable possibility that the restitution can be paid." *Coleman*, 9 F.3d at 1487. The Tenth Circuit Court of Appeals has held that a "restitution order will be upheld if it is supported by at least some evidence that the defendant has either available assets or sufficient earning potential." *United States v. Bowes*, 189 F.3d 479, 1999 WL 641869, at *2 (10th Cir. Aug. 24, 1999, unpublished); *Rogat*, 924 F.2d at 985; *see also United States v. Williams*, 996 F.2d 231, 233 (10th Cir.1993).

There are numerous cases where appellate courts have reviewed sentencing orders involving restitution and fines. It is instructive to review several such opinions by the Tenth Circuit Court of Appeals even though many are unpublished. In *Williams*, 996 F.2d at 235, the Tenth Circuit held that an indigent defendant who faced a 20–year term of imprisonment and a $13,000 restitution order, had an "objectively reasonable" possibility of being able to pay the restitution, in large part because of the Inmate Financial Responsibility Program in the federal prisons, through which money that inmates earn working in prison can be applied to restitution.

In *Bowes*, at *2, the Tenth Circuit found that the presentence investigation report showed that Bowes had been employed while in prison during the preceding three to four years and could meet his restitution obligation from his prison pay alone ($2,982 over 100 months). The court in *Bowes* stated that "we have upheld similar restitution orders, taking into consideration a defendant's ability to earn money while incarcerated over a long period of time." *Citing Coleman*, 9 F.3d at 1486 ($5,528 over 32 years) *and Williams*, 996 F.2d at 234–35.

In *United States v. Ankerpont*, 145 F.3d 1346, 1998 WL 229606 at *3 (10th Cir. May 8, 1998, unpublished), the Tenth Circuit upheld an $8000 fine based upon the district court's determination that the defendant could pay through the IFRP during incarceration.

In *United States v. Henson*, 64 F.3d 670, 1995 WL 503972, at *1 (10th Cir. August 25, 1995), the Tenth Circuit affirmed a fine of $1500 on the basis that the district court "expressly referred to the inmate financial responsibility program as a source of funds, plus employment during supervised release." *Id.* The district court had ordered during sentencing that the "fine is due immediately, but any amount not paid immediately shall be paid during the period of incarceration" through the IFRP. *Id.*, at *2.

The Tenth Circuit upheld a fine of $1,000 against a defendant with no identifiable assets in *United States v. Weber*, 68 F.3d 484, 1995 WL 607616 (10th Cir. October 17, 1995, unpublished). In the judgment the court had ordered that the fine "be paid immediately," that any "amount not paid immediately shall be paid while in custody" through IFRP, and that "upon release from custody, any unpaid balance shall be paid during the term of supervised release."

The Tenth Circuit in *Bowes* distinguished cases finding an abuse of discretion in ordering restitution as involving restitution orders so disproportionate to a defendant's ability to pay that there was no possibility of complying with the order. *Bowes*, 1999 WL at *3; *see, e.g. Clark*, 901 F.2d at 855 (restitution order of $153,762 vacated where only evidence considered indicated no probable expectation of ability to pay any restitution); *McIlvain*, 967 F.2d at 1481–82 (No evidence that McIlvain has present ability or earning potential to pay restitution of $160,248); *United States v. Patty*, 992 F.2d 1045 (10th Cir. 1993) ($7.6 million restitution order vacated as would take over 100 years to pay, based on defendant's earning ability).

■ In light of these holdings, this court has no difficulty concluding that the record in this case reflects a reliable basis for the sentencing court to have determined that Phillips would be able to pay restitution through participation in the

IFRP. The sentencing court's explanation at the sentencing hearing as well as the terms of the plea agreement provide for payments toward the $3,870 restitution obligation during Phillip's 11½ years of incarceration "consistent with the IFRP." The VWPA contemplates restitution as a condition of probation. 18 U.S.C. § 3663. Thus, after making payments while imprisoned, Phillips must make a good faith effort to pay the balance of his restitution obligation, if any, as a condition of the five-year probationary period following his release. Even though the sentencing court did not make any specific findings regarding Phillips' ability to pay restitution, the transcript of the sentencing hearing makes it clear that his ability to pay was considered by the court.[4] *United States v. Morrison,* 938 F.2d 168, 171 (10th Cir.1991). This court concludes from the record that the sentencing judge reasonably found that defendant had sufficient earning potential to pay the restitution as ordered.

## SCHEDULING OF PAYMENTS

Petitioner's argument that the court improperly delegated payment scheduling is an untimely § 2255 claim and is defeated by a careful look at the record[5]. Although the Tenth Circuit read one paragraph in the sentencing transcript, (Crim. file, Doc. 40, p. 9,) as the court having delegated the determination of the amount and scheduling of payments to the U.S. Probation Office, that is but a small part of the record. The very next paragraph and other portions of the criminal record render that general statement ambiguous

and clearly specify that the sentencing judge intended for Phillips to pay restitution through the IFRP and as a condition of probation if released prior to its satisfaction. Petitioner's own post judgment motion indicates he was aware of the sentencing judge's intent. Thus, there is no substantial uncertainty or inconsistency in the restitution judgment. *See Gabriele,* 24 F.3d at 72.

 Petitioner contends that the district court improperly delegated to the BOP the duty of setting a payment schedule for restitution. Petitioner also complains that he cannot be required to pay on his court-ordered restitution because the sentencing court did not set the repayment plan, but instead ordered the impossible— immediate payment. These claims, besides being § 2255 rather than § 2241 claims, lack legal merit in the opinion of this court.

In support of his claims, petitioner cites *United States v. Porter,* 41 F.3d 68 (2d Cir.1994), where it was held that the sentencing court cannot delegate the judicial functions of setting the amount of restitution or scheduling of installment payments to the probation officer[6]. As noted in *Alevras,* 49 F.Supp.2d at 1113, the issue of post-sentencing collection of restitution and fines has lead to a spate of decisions recently. A number of federal inmates have raised the argument that allowing the prison to withhold wages to pay a court-ordered restitution is an improper intrusion upon the court's sentencing authority. They cite several decisions[7] holding that a

---

4. In *Kunzman,* the sentencing court did not make specific findings as to defendant's ability to pay restitution. However, during sentencing, the court stated that it had considered the presentence report, as well as evidence at trial. On appeal, the Tenth Circuit held this sufficiently established that the district court had considered the information available. 54 F.3d at 1532–33.

5. Petitioner does not complain as to the amount of loss determined by the sentencing court.

6. In *United States v. Mortimer,* 94 F.3d 89, 90–91 (2d Cir.1996), it was held that "because payment schedules under the IFRP are not fixed according to a predetermined formula, but rather vary at the discretion of the prison staff, the delegation is just as real as in *Porter,*" 41 F.3d at 71, and that the rationale of that case was equally applicable. The court noted that its conclusion was in accord with *United States v. Miller,* 77 F.3d 71 (4th Cir. 1996).

7. The Tenth Circuit noted in Phillips' appeal of his earlier motion, at * *1 that a "majority

sentencing judge may not delegate to a probation officer or other non-judicial officer the power to determine the timing or amount of installment payments for monetary penalties the court has imposed. *See cases cited in Montano–Figueroa v. Crabtree,* 162 F.3d 548, 549 (9th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1505, 143 L.Ed.2d 657 (1999).

Several circuits have reasoned that certain language in the VWPA [8] prevents district courts from delegating authority to set payment schedules. *See, e.g. Graham,* 72 F.3d at 356–57; *Porter,* 41 F.3d at 71; *United States v. Ahmad,* 2 F.3d 245, 248–49 (7th Cir.1993). *But cf., United States v. Lilly,* 901 F.Supp. 25, 31–32 (D.Mass. 1995), *a'ffd,* 80 F.3d 24 (1st Cir.1996). Other circuits have reasoned that the determination of restitution and payment schedules is a judicial function the delegation of which would violate Article III of the United States Constitution. *See* e.g., *Johnson,* 48 F.3d at 808–09; *Albro,* 32 F.3d at 174.

The Ninth Circuit recently rejected the delegation claim presented by Phillips. In *Montano–Figueroa,* the petitioner claimed that the prison was "unlawfully 'carrying out the sentencing judge's judicial function by regulating the time, dates, and amounts of installment payments'." 162 F.3d at 549. Montano contended that to allow the prison to withhold wages to pay a court-ordered fine is an improper intrusion upon the court's sentencing authority.

The Ninth Circuit stated that they had already "implicitly endorsed" the IFRP by holding that a district court did not err in imposing a fine based on the inmate's future ability to pay the fine through the IFRP, *citing United States v. Haggard,* 41 F.3d 1320 (9th Cir.1994). Other courts

have similarly concluded that the amount of a fine or restitution may be based on the inmate's likely prison earnings through the IFRP. *See United States v. Fermin,* 32 F.3d 674, 682, FN4 (2d Cir.1994), *vacated on other grounds,* 1998 WL 249179 (S.D.N.Y. May 18, 1998); *United States v. Taylor,* 984 F.2d 618, 619 (4th Cir.1993); *United States v. Turner,* 975 F.2d 490, 498 (8th Cir.1992); *but cf., Mortimer,* 94 F.3d at 91, FN 2 (A district court may draw upon IFRP guidelines in the Code of Federal Regulations in fashioning a restitution order that specifies amounts to be paid, so long as discretionary authority to depart from the court's order is not vested in prison officials).

The Tenth Circuit apparently has not ruled upon the precise legal issue of whether or not a restitution order requiring payment through the IFRP is an improper delegation. It has however, clearly approved of the factual circumstance of payment of reasonable restitution and fines through the IFRP. *See* cases cited *infra* at p. 1189. This court cannot imagine that the Circuit would now hold that payments of restitution made through the IFRP are an improper delegation given its prior decisions.

This court finds that Ninth Circuit's decision in *Montano–Figueroa* persuasive and hereby adopts its reasoning. In petitioner's case, the sentencing court made findings as to the amount of restitution and specifically found that defendant had reasonable potential to pay restitution through the IFRP and while on conditional release. This court holds that the IFRP provides an appropriate avenue for payment of petitioner's court-ordered financial obligation.

---

of circuit courts considering whether a sentencing court may delegate its authority to set restitution payment amounts and schedules have held that this authority may not be delegated." *Citing Mortimer,* 94 F.3d at 91; *Johnson,* 48 F.3d at 808–09; *United States v. Graham,* 72 F.3d 352, 356–57 (3d Cir.1995); *cert. denied,* 516 U.S. 1183, 116 S.Ct. 1286, 134 L.Ed.2d 230 (1996); *United States v.*

*Yahne,* 64 F.3d 1091, 1097 (7th Cir.1995); *United States v. Albro,* 32 F.3d 173, 174 (5th Cir.1994).

**8.** The VWPA provides, "The [sentencing] court may require that [the] defendant make restitution under this section within a specified time or in specified installments." 18 U.S.C. § 3663(f)(1).

This improper delegation claim is also without merit based upon the record. Here, the restitution order on its face does not provide that the probation officer shall establish a repayment schedule. Instead, it states simply that restitution shall be "due immediately." This order does assume, as is common practice, that the probation department may employ an installment schedule when Phillips is on supervised release. However, it does not expressly delegate to the probation officer the establishment of any other payment schedule. *See United States v. Trigg,* 119 F.3d 493, 500 (7th Cir.1997).

Furthermore, the regulations governing the IFRP set forth that up to 50% of an inmate's pay may be applied to restitution. A sentencing judge may be assumed to have been aware of those provisions when ordering restitution paid through the IFRP.

**EXECUTION OF SENTENCE CLAIMS**

█ As noted, a petition under § 2241 must attack execution of the sentence rather than its validity. The only question appropriately before this court under § 2241 is whether or not the Bureau of Prisons has the authority to execute the restitution judgment portion of the sentence through the IFRP. Petitioner's contention in his own words is that "the Federal Bureau of Prisons may not delegate financial payments as it applies to court ordered restitution through the (IFRP)."

On the question of the BOP's authority to operate the IFRP, the district court in *Prows,* 704 F.Supp. 272, at 274–275, (D.D.C.1988), *aff'd* 938 F.2d at 274, clearly explained as follows:

> The Bureau ... has been given explicit statutory authority to 'have charge of the management and regulation of all Federal penal and correctional institutions' and to 'provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States.' 18 U.S.C. § 4042. Even more broadly, the Attorney General has been given statutory authority to provide for the 'proper government, discipline, treatment, care, rehabilitation, and reformation' of all federal inmates. *Id.* at § 4001. This specific statutory authority has, in turn, been delegated to the Bureau of Prisons. *See* 28 C.F.R. § 0.96(q)....

> The (IFRP) ... falls within the Bureau's authority to provide for ... the rehabilitation and reformation of federal inmates.... [T]he Bureau of Prisons has the statutory authority to condition UNICOR employment on an inmate's demonstration of financial responsibility as set forth in the (IFRP).

It has also been held that the IFRP "serves a valid penological objective of rehabilitation by facilitating repayment of debts." *Johnpoll v. Thornburgh,* 898 F.2d 849, 850–851 (2d Cir.), *cert. denied* 498 U.S. 819, 111 S.Ct. 63, 112 L.Ed.2d 38 (1990); *James v. Quinlan,* 866 F.2d 627, 630 (3d Cir.), *cert. denied,* 493 U.S. 870, 110 S.Ct. 197, 107 L.Ed.2d 151 (1989). The court in *Johnpoll* reasoned that the challenge to the authority of the BOP "to collect moneys owing for civil judgments must fail, because the IFRP program serves valid penological interests and is fully consistent with the Bureau of Prisons' authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation." *Johnpoll,* 898 F.2d at 851; *James,* 866 F.2d at 627; *Prows,* 704 F.Supp. at 274–75; *see also Muhammad v. Moore,* 760 F.Supp. 869 (D.Kan.1991). The *Johnpoll* court concluded that the BOP "has not exceeded its statutory authority, nor departed from its own regulations, by administering a program to collect court-ordered civil judgments or fines." *Id.; see also United States v. Gomez,* 24 F.3d 924, 926 (7th Cir.1994) (trust accounts may be tapped to pay restitution). The court in *Johnpoll* additionally held that compelled participation in the program is not punitive in nature or violative of due process because it is "reasonably related to a legitimate governmental objective of rehabilitation." *Id.* This court agrees with the reasoning and holding in *Johnpoll* and finds no valid reason to question the authority of the

BOP to collect restitution payments through the IFRP.

The court further finds that Phillips has not right to a UNICOR job without meeting the prerequisite of participation in the IFRP. Traditionally, prisoners have had no entitlement to a specific job, or even to any job. *James,* 866 F.2d at 630. The Supreme Court has held that "as long as the conditions or degree of confinement to which ... [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). Incarceration without being assigned a job is within the sentence imposed upon petitioner. Inmates do not possess a liberty or property interest in Federal Prison Industries job assignments arising from either the Due Process Clause, a federal statute, or prison regulations. *James,* 866 F.2d at 629–30. It follows that Phillips has no liberty interest in his UNICOR job assignment. *Id.* at 629; *Dorman v. Thornburgh,* 955 F.2d 57, 58–59 (D.C.Cir.1992). Since petitioner has no constitutional right to remain in his UNICOR job assignment, he may be presented with a choice of assigning one-half or his pay or losing his job without any violation of his constitutional rights. *Id.* He may be properly viewed as simply having volunteered to assign one-half of his pay in order to meet the conditions for remaining in his UNICOR job assignment. *Id.*

Moreover, as the *James* court reasoned, even if petitioner could establish a constitutional right in his UNICOR job assignment, an inmate's constitutional rights may be impinged by a prison regulation if it is reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987). This court has no doubt that the IFRP is reasonably related

to a legitimate penological interest in encouraging inmates to rehabilitate themselves by developing a sense of financial responsibility. Therefore, even if petitioner could establish the existence of a constitutional right in his UNICOR assignment, it would not be violated by the IFRP. The court concludes that the BOP's IFRP is within its authority and that petitioner's payment of restitution through the IFRP is not illegal.

## COLLECTION OF RESTITUTION

 Petitioner assumes that because the sentencing judge designated payment "in full immediately," when Phillips was unable to pay it in a lump sum, somehow the judgment expired and he no longer is liable for the amount owing to the victim. This assumption disregards the nature of judgments in general.

In *Ahmad,* the court compared civil with criminal restitution judgments. It noted that the victim of a crime may obtain a civil judgment for the damage done, but that "full restitution" being the "norm under victim restitution acts," spares victims the need to get a separate civil judgment. *Ahmad,* 2 F.3d at 247. Once a money judgment in a civil case has been entered, collection may be handled through garnishments of wages and similar techniques. Restitution orders are collectible "in the same manner as a judgment in a civil action." *Porter,* 90 F.3d at 69–70, *citing* 18 U.S.C. § 3663(h). after Phillips's supervised release expires, the outstanding portion of the restitution order is enforceable as if it were a civil judgment. *Id.* Inability to satisfy a judgment is no defense in civil litigation, and a civil judgment arising out of crime, like an award of restitution, may not be discharged in bankruptcy.

As the *Ahmad* court observed, the wrongdoer is legally obligated to make his victim whole whether or not the court includes restitution as part of the criminal judgment. Thus it is puzzling that there should be any distinction between civil judgments and criminal restitution [9].

9. The court in *Ahmad* pondered why there is any distinction:

A judgment in civil litigation specifies the amount due without elaboration. If imme-

There are statutory limits to the deadline by which full payment must be made. If the court sentences the defendant to probation, it must require that the full amount of restitution ordered be paid by the end of the period of probation. 18 U.S.C. § 3663(f)(2)(A).

A court is authorized to order a schedule of payments until five years after the prison term ended. 18 U.S.C. § 3663(f)(2)(B). However, the court in *Fuentes* instructed that:

"the defendant is not automatically 'off the hook' at the end of that period. While the court might no longer be able to enforce its order through its contempt power or through revocation of supervised release, the VWPA provides two other methods of enforcement." First, the United States can enforce a restitution order "in the manner provided for the collection and payment of fines in subchapter B of chapter 229 of" Title 18 of the United States Code. Subchapter B ... provides ... that a fine is "a lien in favor of the United States upon all property belonging to the person fined." 18 U.S.C. § 3613(a) (1994). This lien becomes unenforceable twenty years after entry of judgment or upon the defendant's death. See 18 U.S.C. § 3613(b).

Second, both the United States and any victim named in the restitution order may enforce the order "in the same manner as a judgment in a civil action." 18 U.S.C. § 3663(h)(1)(B), (h)(2). Presumably, the restitution order may be recorded as a money judgment and thus become a lien on the defendant's property.

*Fuentes,* 107 F.3d at 1533, FN 33.

The VWPA even contemplates "due immediately" as a way of construing a nonspecific order [10]. Surely, utilizing the statutory construction would not also mean the order is void if restitution was not fully paid upon its issuance.

Good faith compliance with a restitution order is a condition of supervised release. 18 U.S.C. § 3663(g). The probation officer is given the role of supervising the order of restitution entered by the court to the extent provided by statute or ordered by the court. See 18 U.S.C. § 3603. The restitution judgment in Phillips' case will only terminate five years after petitioner's release from prison, if by his good faith efforts he is unable to complete payment. There is no legal authority for the proposition that a restitution designated as due immediately becomes void if it cannot be paid immediately.

## PLEA AGREEMENT

 A final substantial reason for denying petitioner relief is found in the record of the criminal proceeding. The court's discussion at the sentencing hearing reveals that the plea agreement provided that Phillips would pay full restitution. It has been held that the court may order payment of restitution "to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3); *United States v. Thompson,* 39 F.3d 1103, 1104 (10th Cir.1994); see also *United States v. Bartsh,* 985 F.2d 930, 933 (8th Cir.1993),

diate payment proves impossible, accommodation will occur in the course of collection. A judgment creditor will garnish the judgment debtor's wages and collect incrementally, even though the court has not said a word about installments. Why should it be so different with criminal restitution. If the sentence specifies the amount of restitution, without elaboration, and makes payment a condition of probation or supervised release, the probation officer will eventually assess the defendant's progress toward satisfaction of his debt, and if the defendant is not paying what he can the

probation officer may ask the judge to revoke or alter the terms of his release. Everything can work fairly without any effort to establish installments on the date of sentencing and without delegating a judicial function to a probation officer. *Ahmad,* 2 F.3d at 249.

10. Where the order is silent as to a repayment schedule, then the remaining portion of the restitution order will be treated as due immediately. 18 U.S.C. § 3663(f)(3); *Porter,* 90 F.3d at 70.

*cert. denied,* 510 U.S. 1170, 114 S.Ct. 1204, 127 L.Ed.2d 551 (1994); *United States v. Patty,* 992 F.2d at 1050. When a defendant knowingly bargains to make full restitution in exchange for dismissal of other pending counts, it should be "presumed the bargain was made with its consequences in mind." Moreover, it should also be "presumed a defendant in those circumstances considered the financial burden a fair exchange for the penal advantage gained." *See Thompson,* 39 F.3d at 1105; *Bartsh,* 985 F.2d at 933. Petitioner agreed to pay full restitution and to payment of restitution through the IFRP as a part of his plea agreement, and received the benefits of that agreement.

## DISCRIMINATION

Petitioner also claims that the IFRP "discriminates against a higher grade worker" and denies equal protection. No constitutional claim is presented his allegations because there is no indication that the alleged different treatment is based upon any suspect classification such as race.

For all the foregoing reasons, the court concludes that Phillips is not entitled to relief under 28 U.S.C. § 2241.

IT IS THEREFORE BY THE COURT ORDERED that this action is dismissed and all relief denied.